**JAY R. REYNOLDS, INC., Petitioner,**

v.

**DEPARTMENT OF LABOR & INDUSTRY, PREVAILING WAGE APPEALS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1995.
Decided July 10, 1995.

---

NEWMAN, Judge.

Jay R. Reynolds, Inc. (Reynolds) appeals from a decision of the Prevailing Wage Appeals Board (Board) that affirmed an order of the Secretary of Labor and Industry (Secretary) determining that Reynolds had unintentionally failed to pay $11,453.36 in prevailing minimum wages for three public work projects as required by the Pennsylvania Prevailing Wage Act (Act).[1] This underpayment is attributable to contributions for health and welfare benefits required under the Act.

Reynolds bid for, and was awarded, three public work projects: (1) conversion of Retreat State Hospital to a State Correctional Institution in Hunlock Township, Luzerne County; (2) renovation of Boothwyn Elementary School, Chichester School District, Boothwyn Township, Delaware County; and (3) water systems rehabilitation at the correctional institution at Graterford, Skippack Township, Montgomery County. Under the Act, Reynolds was required to pay its workers on these projects prevailing wages that include health and welfare contributions at predetermined rates. Reynolds did make monthly health and welfare contributions for its workers to the Associated Builders and Contractors Insurance Trust Fund (ABC Fund).

However, on December 23, 1987, the Department of Labor and Industry, Prevailing Wage Division (Division) issued an order to show cause alleging that Reynolds was not properly determining the health and welfare contributions it made to the ABC Fund for these public work projects and that Reynolds was underpaying its contributions.

Reynolds did not keep records that adequately segregated its fringe benefits payments according to the hours that workers labored at the Retreat State Hospital, Boothwyn Elementary School, and the Correctional Institution at Graterford. Thus, to determine whether Reynolds' payment into the ABC Fund was in compliance with the

Thomas R. Davies, for petitioner.

Frayda Kamber, for respondent.

Richard C. Lengler, Asst. Counsel, for intervenor.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

---

1. Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165–1—165–17.

Generally, the Act requires:

Not less than the prevailing minimum wages as determined hereunder shall be paid to all workmen employed on public work. Section 5 of the Act, 43 P.S. § 165–5.

requirements of the Act, the Division divided Reynolds' monthly contribution for each employee by one hundred sixty (160) hours to estimate an hourly cost.[2] The figures that resulted in computing Reynolds' contributions were less than the health and welfare rates specified in the predetermination for the contracts. The difference between the two amounts was multiplied by the number of hours worked by each employee on the public work projects to determine the amount of the underpayment. The total underpayment assessed by the Division for Reynolds' three jobs was $11,453.36.

Reynolds answered the Division's order to show cause and moved for dismissal of the case based on affirmative defenses. On February 5, 1990, the Secretary issued an interlocutory decision denying the motion to dismiss and rejecting the various affirmative defenses interposed by Reynolds.

The Pennsylvania State Building and Construction Trades Council intervened in the proceedings. The parties then set forth stipulated facts and agreed to waive their right to a hearing. However, Reynolds reserved its right to appeal the Secretary's interlocutory decision.

On June 24, 1991, the Secretary issued a final decision and order affirming the interlocutory order that established the underpayment. Reynolds appealed to the Board. The Board issued its decision on July 5, 1994 affirming the Secretary's order. Reynolds now appeals to this court.

On appeal,[3] we consider whether: (1) the resolution of this matter is preempted by the Employee Retirement Income Security Act of 1974 (ERISA),[4] and (2) whether the Division's formula for calculating fringe benefit credits is valid under the Commonwealth Documents Law.[5]

■ First, Reynolds argues that the provisions of ERISA should preempt the Act in determining the terms of fringe benefits contributions required by a contractor. The United States Court of Appeals for the Third Circuit's decision in *Keystone Chapter, Associated Builders and Contractors, Inc. v. Foley*, 37 F.3d 945 (3rd Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995) discusses this issue. In this case, the Third Circuit held that the Act is not preempted by ERISA because the Act may be implemented in a manner consistent with ERISA. It is appropriate for us to defer to the holding of the Third Circuit in this matter, because this is a question of federal law. *See Nobers v. Crucible Inc.*, 431 Pa.Superior Ct. 398, 636 A.2d 1146, *petition for allowance of appeal denied*, 537 Pa. 665, 644 A.2d 1201 (1994) (where a federal circuit court has spoken on a federal question, the ultimate answer to which has not yet been provided by United States Supreme Court, it is appropriate to follow the circuit court's decision). Accordingly, we decline further review of this issue at this time.

■ Secondly, Reynolds argues that the formula applied by the Division to determine the existence and amount of Reynolds' health and welfare underpayment violates the Commonwealth Documents Law. The Commonwealth Documents Law requires that an agency provide the public with notice of its agency rules and procedures in order for such rules to be valid. 45 P.S. § 1201. Reynolds submits that the formula applied by the Division should have been promulgated and published as a regulation. It is Reynolds' position that the failure of the Board to

---

**2.** The averaging formula used by the Division is a simple one standardly used by the Secretary when a contractor fails to keep records of the hours worked on public work projects. This formula was used and approved in the case of *E.H. Gochnauer*, Predetermination Serial No. 35636(12)), filed December 28, 1983.

**3.** Our scope of review in this matter is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, whether the proceedings relating to practice and procedure before an agency have conformed to the Administrative Agency Law and whether the necessary findings of fact are supported by substantial evidence.

Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**4.** Act of Sept. 2, 1974, P.L. 93–406, Title I, Subtitle A, § 1, 88 Stat. 832, *as amended*, 29 U.S.C. §§ 1001, *et seq.*

**5.** Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. § 1201–1208.

do so renders the assessment by the Division invalid. We disagree.

In its determination, the Board concluded that the formula was an interpretation of the Act as opposed to a legislative rule. The Board reasoned that the formula was a mechanism for applying the law and did not improperly expand the meaning of the Act.

 It is a general principle that an agency may render interpretive law so long as the interpretive rule is one that a reviewing court determines tracks the meaning of the statute that it interprets. *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 313 A.2d 156 (1973). Our review of the record convinces us that the formula is an interpretative rule.

The formula is simply a mechanism for applying the law to a contractor who fails to keep records required under Section 6 of the Act.[6] Clearly, the formula does not expand upon the plain meaning of the Act. Since the formula is an interpretive rule that tracks the Act and does not expand the plain meaning of the Act, there is no requirement that it be published or codified as a regulation pursuant to the Commonwealth Documents Law.

Because we have concluded that the formula is an interpretive rule, we must now decide, pursuant to our Supreme Court's holding in *Uniontown,* whether the rule is violative of legislative intent. A reviewing court should give deference to an administrative agency but also should disregard an interpretive rule if convinced that the interpretive rule is unwise or violative of legislative intent. *Id.*

We believe that the formula applied by the Division is a proper interpretation of the Act. The purpose of the Act is to protect workers employed on public work projects from substandard pay by ensuring that they receive prevailing minimum wages. *Kulzer Roofing, Inc. v. Department of Labor and Industry,* 68 Pa.Commonwealth Ct. 642, 450

A.2d 259 (1982). The formula promotes the well-being of workers in a case such as this where a contractor has failed to keep the required records of the hourly amount paid to its workers as required by Section 6 of the Act. This formula is a simple averaging mechanism for converting the value of the employer's monthly contribution for each employee into hourly terms. Therefore, we conclude that it is not violative of legislative intent.

Accordingly, we affirm the order of the Board.

### ORDER

AND NOW, July 10, 1995, we affirm the order of the Board, dated July 5, 1994.

---

6. This Section states:
**Duty of Contractor**
Every contractor and subcontractor shall keep an accurate record showing the name, craft and the actual hourly rate of wage paid to each workman employed by him in connection with public work, and such record shall be preserved for two years from date of payment. The record shall be open at all reasonable hours to the inspection of the public body awarding the contract and to the secretary.
43 P.S. § 165–6.