SUCCESS AGAINST ALL ODDS, by Shei-
la ST. AMAND, Trustee ad Litem, Kens-
ington Welfare Rights Union, by Cheri
Honkala, Trustee ad Litem, Denise Bell,
Carmen Pereira, and Maria Casiano, on
behalf of themselves, their members,
their minor children, and all other simi-
larly situated persons, Petitioners,

v.

DEPARTMENT OF PUBLIC WELFARE
OF THE COMMONWEALTH of
Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 2, 1997.

Decided Aug. 20, 1997.

Mary A. McLaughlin and Susan Frietsche, Philadelphia, for petitioners.

John A. Kane, Chief Counsel, Harrisburg, for respondent.

Before DOYLE and PELLEGRINI *, JJ., and JIULIANTE, Senior Judge.

DOYLE, Judge. **

Before us for disposition are the preliminary objections of the Department of Public Welfare (DPW) to Petitioners' April 1, 1997 class action petition for review filed in our original jurisdiction pursuant to 42 Pa.C.S.

---

* Judge Pellegrini was designated to replace Judge Leadbetter subsequent to oral argument due to Judge Leadbetter's recusal from this matter.

** This opinion was assigned to the author to write on July 23, 1997.

§ 761. Petitioners are two organizations, Success Against All Odds and the Kensington Welfare Rights Union, and three individual public assistance recipients who sued on their own behalf as well as for all those similarly situated. For the following reasons, we sustain DPW's preliminary objections in the nature of a demurrer, but we will address all of the objections raised by DPW because the matter is in our original jurisdiction and will more than likely be appealed to the Supreme Court for appellate review.

On April 1, 1997, Petitioners filed a class action petition for review [1] seeking injunctive, declaratory and monetary relief against DPW, which had suspended child support pass-through payments to eligible public assistance beneficiaries. The impetus for the petition for review was DPW's March 1, 1997 publication in the Pennsylvania Bulletin of a "Notice of Rule Change" announcing the elimination of the child support pass-through payments for both federal and state aid recipients.[2] In initiating the elimination of the child support pass-through payments, DPW relied upon its interpretation of language contained in Act 35 of 1996,[3] which was adopted by Pennsylvania's General Assembly and signed into law by Governor Ridge on May 16, 1996.

Section 12 of Act 35 amended Section 432.7 of the Public Welfare Code [4] (Code), in pertinent part, as follows (with additions indicated by underline and deletions indicated by strikeout):

**Section 432.7. Determination of Paternity and Enforcement of Support Obligations**

In accordance with a child support plan approved by the Federal Government, the department shall have the power and its duty shall be to:

(a) Require as a condition of eligibility for assistance that the applicant or recipient:

. . . .

(2) Assign to the department on forms provided by the department such support rights as the applicant or recipient may have ~~in his own behalf~~ *individually* or on behalf of any family member who is a part of the assistance ~~unit~~ *group*.

. . . .

(b) ~~Provide for protective payments as set forth in section 432.7A.~~ *Require cooperation in accordance with the following:*

(1) *Subject to federal approval, only when necessary, cooperation shall include, but not be limited to, taking the following actions:*

(i) *identifying the parents of any child for whom assistance is sought or received, including appearing for scheduled genetic testing with the child;*

. . . .

1. On April 22, 1997, Judge George T. Kelton issued an order certifying the following class:

 The petitioner class consists of all families in Pennsylvania who would be eligible to receive Child Support Pass–Through payments if Child Support Pass–Through payments had not been discontinued for child or spousal support collected on or after March 3, 1997, and all families who would be eligible for cash assistance if $50 per month of child or spousal support continued to be disregarded in determining eligibility and calculating cash assistance benefits.

2. In his April 25, 1997 opinion enjoining DPW from enforcing the "Notice of Rule Change," Judge George T. Kelton set forth a cogent explanation of child support pass-through payments:

 When a child in Pennsylvania receives cash assistance from the State, the child's family is required to assign all rights to child support or spousal support to [DPW] pursuant to applicable state and federal law. From 1984 until 1996, federal law required that the first $50 of current child or spousal support paid to the state ... be disregarded in determining eligibility for, and calculating the amount of AFDC [Aid to Families with Dependent Children] payments. Former federal law also required that the first $50 of such support be paid directly to the family receiving assistance, or "passed through" the state agency directly to the family. These provisions were commonly referred to as the "pass through" requirements, and were intended to assist the governmental agency in the collection of child support by offering a cash incentive to aid recipients to ensure their cooperation.... (Judge Kelton's April 25, 1997 Opinion at 2.) (Footnote omitted.)

3. Act of May 16, 1996, P.L. 175, No. 35.

4. Act of June 12, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101–1411.

*(vi) paying to the department any support payment received directly from an absent parent after an assignment of support has been made.*

. . . .

(c) Provide that in any case in which the child support payments are collected for a child with respect to whom an assignment has been made pursuant to clause (2) of subsection (a), such payment shall be made to the department for distribution pursuant to subsection (g) except for those payments made for any month in which the amount collected is sufficient to make such family ineligible for assistance. . . .

. . . .

(g) ~~Provide for bonus payments to recipients consistent with Federal law from amounts collected periodically without any decrease in the amount of assistance.~~ *The department shall continue payment of support pass-through payments to assistance recipients as required by Federal law.*

Consequently, Section 432.7(g) of the Code, which is the specific section of the Code that pertains to child support pass-through in this Commonwealth, now provides that "[t]he department shall continue payment of support pass-through payments **as required by Federal law.**"

At the time Act 35 was signed into law by Governor Ridge, the federal government had not yet changed the federal requirement that states receiving block grants recognize the fifty-dollar child support pass-through. However, on August 22, 1992, the United States Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), which repealed the Aid to Families with Dependent Children (AFDC) program and replaced it with the Temporary Aid to Needy Families (TANF) program. PRWORA essentially put an end to the federal requirement that states comply with child support pass-through. Because federal law ceased to require the pass-through payments, DPW concluded that, pursuant to the express language of Section

12 of Act 35, DPW was no longer required, or authorized, to make such pass-through payments and therefore responded accordingly.

On January 18, 1997, DPW published its TANF State Plan in the Pennsylvania Bulletin and submitted the State Plan to the federal government at that time as well. Subsequently, in accordance with Section 20 of Act 35, the Department published a "Notice of Rule Change" to announce the implementation of the State Plan, including the rescission of the regulation requiring DPW to disregard the first fifty dollars of support received by the family, which had been codified at 55 Pa.Code § 183.81(29). The change was to be effective as of March 3, 1997, as authorized by the federal government.[5]

On April 1, 1997, Petitioners filed a motion for a preliminary injunction, seeking to enjoin DPW from enforcing its policy regarding the elimination of child support pass-through. On April 22, 1997, Judge Kelton considered Petitioners' request for a preliminary injunction. No testimony or other evidence was taken at that time in light of the lengthy joint stipulation of facts, which consisted of thirty-two pages with 104 stipulated facts and was dated the same day.

The joint stipulation of facts, with emphasis added, pertinently provides as follows:

## I. LEGISLATIVE HISTORY OF ACT 35 OF 1996

1. Senate Bill 1441, the legislation eventually enacted as Act 35, as originally introduced, contained the following provision:

> Subject to Federal approval, only when necessary, the department shall cease payment of support pass-through payments to assistance recipients. Such cessation shall occur at the earliest time permitted by Federal law.

S.B. 1441, Printer's Number 1814, § 12, amending 62 P.S. § 432.7(g). The Senate passed the bill by a vote of 32–17.

---

**5.** Under PRWORA, federal approval to implement the provisions of Act 35 is obtained through acceptance of the Commonwealth's TANF State Plan and a determination by the federal agency that the Commonwealth is eligible for block grant funding for its TANF program.

2. By a vote of 200–0, the House of Representatives unanimously amended Senate Bill 1441 to delete this proposed language and to restore the prior statutory language at 62 P.S. § 432.7(g), which read:

> In accordance with a child support plan approved by the Federal Government, the department shall have the power and its duty shall be to:
>
> ....
>
> [ (g) ] Provide for bonus payments to recipients consistent with Federal law from amounts collected periodically without any decrease in the amount of assistance.

S.B. 1441, Printer's Number 1992, § 12. This language dated back to 1976.

3. The Senate non-concurred on the House Amendments to S.B. 1441 by a vote of 28–21.

4. The bill was subsequently sent to Conference Committee. **The Conference Committee Report proposed the following language concerning the Child Support Pass–Through:**

> **The department shall continue payment of support pass-through payments to assistance recipients as required by Federal law.**

S.B. 1441, Report of the Committee of Conference, Printer's Number 2008, § 12, amending 62 P.S. § 432.7(g)

....

9. The House of Representatives subsequently passed S.B. 1441 as reported by the Conference Committee by a vote of 103–93.... It became known as Act 35 of 1996, and was signed into law on May 16, 1996.

10. In the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), Pub L. 104–193, Congress enacted a comprehensive restructuring of the nation's welfare system, replacing the Aid to Families with Dependent Children (AFDC) program with the Temporary Assistance for Needy Families (TANF) program.

11. Prior to enactment of PRWORA ("the new federal act") on August 22, 1996,

[DPW] submitted a waiver request to the federal government on July 31, 1996, asking for permission to make numerous changes in Pennsylvania's AFDC program. Federal law at that time permitted DPW to seek a waiver to eliminate the Child Support Pass–Through. DPW did not do so.

## II. STATUTORY FRAMEWORK OF THE CHILD SUPPORT PASS–THROUGH

12. In 1984 Congress required, as part of the AFDC and IV–D (Child Support Enforcement) programs, that the first $50 of current child or spousal support collected by the state each month be paid to the AFDC family, and that $50 of child or spousal support be disregarded in determining eligibility for, and calculating the amount of, AFDC benefits. 42 U.S.C. §§ 602(a)(8)(A)(vi), 657(b)(1) (Supp. II 1984); 45 C.F.R. §§ 233.20(a)(3)(iv)(G), 302.51(b)(1). This became known as the Child Support Pass–Through.

13. The Child Support Pass–Through has been in effect in Pennsylvania since October 1, 1984, as mandated by the Deficit Reduction Act of 1984.[6]

14. Regardless of how many children are in the family, the family receives a maximum Child Support pass-Through of $50 per month. A maximum payment of $50 per month is paid to the family as the Child Support Pass–Through even if more than one absent parent is paying child support for children in the family. The family does not receive the Child Support Pass–Through if the support payment is not made in the month in which it is due. 45 C.F.R. § 302.51(b)(1); 55 Pa.Code § 183.81(29).

15. The Child Support Pass–Through affects families who apply for or receive cash assistance in two ways: as a payment of up to $50 per month per family, and as a disregard of the amount of the Pass–Through in determining eligibility and calculating cash assistance benefits.

---

**6.** Pub.L. 98–369, 98 Stat. 1079–80.

16. When a family applies for cash assistance, their income, including any child or spousal support paid for members of the family, is considered in determining eligibility. Until March 3, 1997, up to the first $50 of current support each month was disregarded (not counted) in determining the family's eligibility for cash assistance and the amount of their benefits.

. . . .

19. A family who applies for cash assistance must assign to DPW all rights to support. DPW notifies the local family court that the family is now receiving cash assistance, and that all child or spousal support payments for family members receiving cash assistance should be sent to DPW, and not to the family.

20. . . . . After the support was paid to DPW, DPW sent the family a separate Child Support Pass–Through check of up to $50 and retained the rest of the support to reimburse the state and federal governments for the welfare grant.

21. If the child or spousal support was paid to the family rather than to DPW (either by mistake or because it was paid voluntarily without a court order) the family was required to send the child support to DPW, which would then send the family a Child Support Pass–Through check of up to $50 per month.

22. The Child Support Pass–Through payments of up to $50 per month were disregarded (not counted) as income by DPW in determining the family's ongoing eligibility for cash assistance.

. . . .

26. According to the federal statute, the TANF program was established "to increase the flexibility of States in operating a program designed" to "(1) provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives; (2) end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage; (3) prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and (4)

encourage the formation and maintenance of two-parent families." Under TANF, states are given block grants of federal funds to operate a program "that provides assistance to needy families with (or expecting) children and provides parents with job preparation, work and support services to enable them to leave the program and become self-sufficient." 42 U.S.C. §§ 601(a)(1), 602(a)(1)(A)(i), as amended by PRWORA, sec. 103. . . .

27. Effective October 1, 1996, with the enactment of TANF, the federal government no longer participated in the cost of Child Support Pass–Through payments, with the result that the costs associated with payment of Child Support Pass–Through payments from October 1, 1996 through March 1997 were borne by the Commonwealth.

28. The new federal act altered federal law in many areas, giving the states greater discretion in administering their cash assistance programs, including the Child Support Pass–Through. Federal law concerning the Child Support Pass–Through now provides:

> In the case of a family receiving assistance from the State, the State shall— (A) pay to the Federal Government the Federal share of the amount so collected; and (B) retain, or distribute to the family, the State share of the amount so collected.

42 U.S.C. § 657(a)(1), as amended by Sec. 302(a), P.L. 104–193. This provision became effective on October 1, 1996.

. . . .

30. Pennsylvania's Child Support Pass–Through regulation in effect at the time the federal law changed did not conflict with requirements of the new federal act. The federal act did not require DPW to alter its regulation concerning the Child Support Pass–Through.

31. **The new federal act does not require Pennsylvania to continue the Child Support Pass–Through, nor does it require Pennsylvania to eliminate the Child Support Pass–Through.**

32. The new federal act allows states to replace the AFDC program with TANF at any point between October 1, 1996, and July 1, 1997. After October 1, 1996, DPW continued making Child Support Pass–Through payments to families each month. On January 18, 1997, DPW published its TANF plan in the Pennsylvania Bulletin, 27 Pa. Bull. 342, announcing the termination of the Child Support Pass–Through on support paid on or after March 3, 1997.

. . . .

## III. DPW'S ACTION CONCERNING THE CHILD SUPPORT PASS–THROUGH

39. DPW announced its decision to eliminate the Child Support Pass–Through in its TANF plan:

> In accordance with Act 35, the state will retain court-ordered support payments up to the amount of the monthly assistance grants. The Support Pass–Through payment of up to $50 from monthly child support payments will no longer be provided to families.

27 Pa. Bull. 348 (Jan. 18, 1997). The TANF plan did not address the Child Support Pass–Through for General Assistance recipients, since the TANF plan included only provisions that govern the TANF program and not the state-funded General Assistance program.

40. On February 7, 1997, DPW issued internal instructions to its staff eliminating the Child Support Pass–Through (and the disregard of up to $50 per month in support when determining eligibility and calculating benefits) for both General Assistance and TANF families, on support paid on or after March 3, 1997. DPW Joint Handbooks Release CAT# 97–01 (Feb. 07, 1997).

41. DPW sent a notice dated February 28, 1997, to all families receiving cash assistance that the Child Support Pass–Through was ending. The notice states that the family can appeal, but that:

> Filing an appeal will not mean that the Support Pass–Through will continue

while an appeal is pending because the Department's decision is based solely on a change in Federal and State law. If you file an appeal, DPW will not hold a hearing unless you have a dispute regarding the facts of your case.

DPW Special Notice About Support Pass–Through.

42. In addition to named petitioners, approximately 36,000 families in Pennsylvania will no longer receive Child Support Pass–Throughs.

. . . .

46. DPW published a Notice of Rule Change on March 1, 1997, announcing the elimination of the Child Support Pass–Through on support paid on or after March 3, 1997, for both TANF and General Assistance families. 27 Pa. Bull. 1092–93 (March 1, 1997). DPW has not otherwise published regulations to eliminate the Child Support Pass–Through.

(Joint Stipulation of Facts at 1–17.) (Emphasis added.)

In his April 25, 1997 opinion and order, Judge Kelton enjoined DPW from enforcing the "Notice of Rule Change" and directed it (1) to continue to pay child support pass-through payments of up to fifty dollars to members of Petitioners' class; and (2) to continue to disregard the first fifty dollars of said payments in determining eligibility for and in calculating the amount of cash assistance benefits. He also directed that the taking of an appeal to the Supreme Court would not operate as an automatic supersedeas.

On April 30, 1997, DPW filed an appeal as of right from this Court's April 25, 1997 preliminary injunction order to the Supreme Court.[7] In addition, on May 1, 1997, DPW filed an application with the Supreme Court to have the automatic supersedeas reinstated pending resolution of the appeal. Petitioners filed their response in opposition to the application for reinstatement on May 8, 1997. On May 21, 1997, DPW filed a motion to expedite consideration of its application to reinstate automatic supersedeas. *See* Pa. R.A.P. 1736(b). The Supreme Court denied DPW's

7. *See* Pa. R.A.P. 1101.

application for supersedeas in late May of 1997, and subsequently, on June 17, 1997, DPW withdrew its appeal from this Court's April 25, 1997 preliminary injunction order.

In the interim, on May 1, 1997, DPW filed with this Court the preliminary objections at issue in this case. On May 6, 1997, we issued an order granting DPW's motion for expedited consideration of its preliminary objections and set oral argument for June 2, 1997, in Pittsburgh.

On the merits, Petitioners' claim for relief is essentially based upon their allegation that DPW's suspension of the pass-through payments violates the governing statute, Section 432.7(g) of the Public Welfare Code, 62 P.S. § 432.7(g), *as amended* by Act 35 of 1996, and DPW's own regulation, 55 Pa.Code § 183.81(29). To reiterate, Section 432.7(g) of the Code presently provides: "The department shall continue payment of support pass-through payments to assistance recipients as required by Federal law." 62 P.S. § 432.7(g). The regulation promulgated to operate in conjunction with Section 437.2(g) of the Code had been located at 55 Pa.Code § 183.81(29) and had provided as follows:

> The following income is not considered in determining the amount of the monthly assistance payment:
>
> . . . .
>
> (29) Support pass-through. The first $50 per budget month of court-ordered and voluntary support payments received, excluding arrearages.

55 Pa.Code § 183.81(29). This regulation was rescinded by DPW in light of the elimination of child support pass-through.[8]

It is the contention of the Petitioners that, by eliminating child support pass-through, DPW violated Act 35 and the Code by misconstruing the amended version of Section 432.7(g) of the Code and failed to follow the procedures prescribed in the Regulatory Review Act[9] and the Commonwealth Documents Law[10] for promulgating a regulation.

In considering DPW's preliminary objections to the petition for review, there are essentially three issues presented for our disposition: 1) whether this Court lacks subject matter jurisdiction over Petitioners' class action petition for review because they failed to file individual appeals with DPW contesting elimination of the pass-through payments; 2) whether Petitioners failed to exhaust their administrative remedies and, if so, whether their failure should be excused because the remedy DPW offered was inadequate; and 3) whether Petitioners failed to state a claim upon which relief could be granted.

When reviewing preliminary objections in a case filed in our original jurisdiction, this Court must consider as true all well-pled facts that are material and relevant. *Pennsylvania Turnpike Commission v. Hafer,* 142 Pa.Cmwlth. 502, 597 A.2d 754 (1991). Preliminary objections should be sustained only where it is clear and free from doubt that the law will not permit recovery. *Ruby v. Department of Transportation,* 158 Pa.Cmwlth. 631, 632 A.2d 635 (1993). Where doubt exists as to whether preliminary objections should be sustained, that doubt should be resolved by refusing to sustain them. *LSC Holdings, Inc. v. Insurance Commissioner of Pennsylvania,* 151 Pa.Cmwlth. 377, 616 A.2d 1118 (1992).

In general, DPW contends that Petitioners in their class action petition for review are seeking from this Court what they were unable to obtain from the General Assembly during the passage of Act 35–namely, the retention of the support pass-through payments independent of any federal mandate. In contrast, Petitioners allege that DPW's attempt to deprive approximately 36,000 eligible families of the support pass-through

---

**8.** We note that Judge Kelton stated in his April 25, 1997 opinion: "We find no evidence in the record that this section has been repealed or modified." However, in 27 Pa. Bull. 1100 (March 1, 1997) it is stated that "references in 55 Pa.Code to the disregard of the receipt of such payments for income eligibility purposes are deleted." (Judge Kelton's April 25, 1997 Opinion at 3 n. 3.) We presume that by "deleting" this regulation, DPW was, in effect, rescinding it.

**9.** Act of June 25, 1982, P.L. 633, *as amended,* 71 P.S. §§ 745.1—745.15.

**10.** Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102—1208.

payments is contrary to the will of the General Assembly as expressed in Act 35.

## I. Lack of Subject Matter Jurisdiction and Failure To Exhaust Administrative Remedies

DPW asserts that Petitioners are attempting to invoke this Court's original jurisdiction even though they failed to appeal from final administrative adjudications. DPW alleges that its February 28, 1997 notice to each class member of its decision to terminate support pass-through payments, which contained a notice that they had thirty days from February 28, 1997, to appeal DPW's action, constitutes a final adjudication as to those class members who failed to take timely administrative appeals. DPW contends that an administrative appeal was their exclusive remedy for challenging DPW's action and that their original jurisdiction action before this Court is an impermissible collateral attack on the administrative adjudication.

Petitioners cite *Arsenal Coal Co. v. Department of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984), in support of their argument that this Court has original jurisdiction over their class action petition for review. In that pre-enforcement case, our Supreme Court held that this Court erred in refusing to exercise our equitable jurisdiction where the available means under The Administrative Code of 1929[11] would have been inadequate for coal mine operators and producers to challenge regulations promulgated by the Environmental Quality Board. In other words, there was no exhaustion of remedies required where there was ongoing uncertainty that involved the day-to-day business operations of an entire industry of statewide concern.

Specifically, in *Arsenal Coal*, the Supreme Court stated:

Where the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement.

....

We believe that the asserted impact of the regulations in the instant case is sufficiently direct and immediate to render the issue appropriate for judicial review; the lengthy process by which the validity of the regulations will be addressed on a basis of application to the litigant would result in the ongoing uncertainty in the day to day business operations of an industry which the General Assembly clearly intended to protect from unnecessary upheaval.

....

... Appellants have alleged that the regulations require the expenditure of substantial sums to comply which, while not immediately calculable, will substantially impair the cash flow of all Appellants. Whether or not this allegation is true, it is clear that if Appellants elect to comply and await judicial determination of validity in subsequent piecemeal litigation, the process would be costly and inefficient.

*Id.* at 209–10, 477 A.2d at 1339–40.

■ DPW acknowledges that courts have excused the need to exhaust administrative remedies where an administrative remedy is unavailable or where the available remedy is inadequate. *E.g., Arsenal Coal; see* (DPW's Brief at 44). DPW also acknowledges that an administrative remedy is inadequate if it does not allow for adjudication of the issue raised or allows irreparable harm to occur to the plaintiffs during the pursuit of the statutory remedy. *Rouse & Associates v. Pennsylvania Environmental Quality Board*, 164 Pa.Cmwlth. 326, 642 A.2d 642 (1994). It argues, however, that none of those scenarios is present here. We disagree.

■ With regard to the adequacy of the proffered remedy, Judge Kelton in his April 25, 1997 preliminary injunction opinion noted that each notice mailed on February 28, 1997, provided the following information with respect to any further hearing:

Filing an appeal will not mean that the Support Pass–Through will continue while an appeal is pending because the Department's decision is based solely on a change in Federal and State law. If you file an

---

**11.** Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§ 51–732.

appeal, DPW will not hold a hearing unless you have a dispute regarding the facts of your case.

On the basis of the clear language of the notice, Judge Kelton concluded that there was little merit to DPW's assertion that there was an adequate administrative remedy available to Petitioners. We further quote, in agreement, from his opinion:

> This alleged administrative remedy, in essence, provides that the appellant will receive no evidentiary hearing and will be unable to dispute DPW's determination to terminate the pass-through, but rather is restricted to "disputes regarding the facts of your case." In other words, DPW appears to have provided the form of an administrative appeal without any substance therein. The Court cannot, therefore, conclude that an *adequate* administrative remedy exists such as to preclude the consideration of this case in our original jurisdiction.

(Judge Kelton's April 25, 1997 Opinion at 9.) (Emphasis in original.) (Footnote deleted.)

Judge Kelton further determined that the effect of the challenged regulations eliminating the pass-through payments would impose a direct and immediate hardship on Petitioners. We agree, and so hold, that the administrative remedies provided by DPW are clearly inadequate, and that exhaustion of those remedies would impose substantial burdens on Petitioners in the interim. We therefore conclude that DPW's preliminary objections concerning this Court's lack of jurisdiction and Petitioners' failure to exhaust administrative remedies are certainly not clear and free from doubt, and, in so concluding, will overrule DPW's preliminary objections in this regard. *See Arsenal Coal.*

## II. Demurrer for Failure To State a Claim Upon Which Relief May be Granted

DPW contends that we should grant its preliminary objections in the nature of a demurrer to the extent that Petitioners have failed to state a claim upon which relief may be granted. To this end, DPW contends that the plain words of Act 35, amending Section 432.7(g) of the Code preclude the continuation of the support pass-through payments absent an existing federal requirement.

Section 12 of Act 35 amended Section 432.7(g) of the Code to provide that "[t]he department shall **continue** payment of support pass-through payments to assistance recipients **as required by Federal law**." 62 P.S. § 432.7(g) (emphasis added). Thus, DPW argues that, because the plain meaning of this language indicates that the General Assembly intended the support pass-through payments to continue only so long as **required** by federal law, we should grant the demurrer it has requested.

Petitioners' response to this, and the basis of their entire claim against DPW, is that DPW violated Act 35 when it "unilaterally eliminated" the child support pass-through payments provided for in the Act; that "[b]y ignoring the statutory constraints on its rule-making power, DPW impermissibly eliminated the Child Support Pass–Through"; and that "DPW implemented this significant rule change with none of the procedural safeguards enshrined in the Commonwealth Documents Law[[12]] or the Regulatory Review Act."[13] (Petitioners' Memorandum in Opposition to Preliminary Objections at 34.)

Petitioners also argue that DPW can only succeed at this preliminary objection stage if its interpretation of Act 35 and the respective legislative history is the *only* reasonable one. While contending that their interpretation of Act 35 is the correct one, Petitioners point to Judge Kelton's conclusion in the preliminary injunction proceeding that they demonstrated the requisite clear right to relief with respect to their statutory construction claim. We note that Judge Kelton concluded that "[t]he issue of statutory construction admits of *two* equally reasonable interpretations." (Judge Kelton's April 25, 1997 Opinion at 9.) (Emphasis added.) DPW interprets the language of Section 12 "as requiring a continuation of [child support pass-through] only to the extent *required* by federal law," while

**12.** Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1208.

**13.** Act of June 25, 1982, P.L. 633 *as amended,* 71 P.S. §§ 745.1–.15.

Petitioners construe the same language to mean that "the [child support pass-through] payments continue in the manner in which federal law, *at the time of enactment, required.*" *Id.* (emphasis added).

■ Notwithstanding the well-reasoned opinion of Judge George T. Kelton disposing of the preliminary issue of whether to grant or deny a preliminary injunction, where the balancing of potential harms is a factor, we believe that at this stage of the proceedings, addressing a demurrer, a definitive legal ruling on the interpretation of the statutory language is now required and that there is in fact only one plausible interpretation to be discerned from the statutory language directly at issue in this appeal. After reviewing Section 12 of Act 35 and considering the arguments presented by both parties on this issue, we must agree with DPW's interpretation.

■ In construing the meaning of statutes of this Commonwealth, we are compelled to observe the rules of statutory interpretation set forth in the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, unless doing so would result in a construction inconsistent with the manifest intent of the General Assembly. In this regard, pursuant to Section 1921 of the Statutory Construction Act,

> When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S. § 1921(b).

Reduced to its essential language, Section 432.7(g) of the Code provides that support pass-through payments should "continue as required by federal law." It is abundantly clear from this language that the child support pass-through payments were intended to last only as long as such payments were required by federal law and not as federal law required when Act 35 was enacted into law. Were we to accept Petitioners' inter-

pretation of Section 12 we would, for all intents and purposes, be concluding that the reference to the existence of federal law in Section 12 is merely superfluous language. Indeed, referring to federal law in Section 12 of Act 35 would serve no other practical purpose if it was not intended to define duration for which the child support pass-through provisions would remain in effect. It is simply implausible to conclude, as Petitioners suggest, that our General Assembly included the language "[DPW] shall **continue** payment of support pass-through payments ... **as required by Federal law**" merely to point out the fact that, at the time Act 35 was enacted, federal law provided for the same pass-through payments. Prior to Act 35, the statute provided that DPW must "[p]rovide for bonus payments to recipients consistent with Federal law from amounts collected periodically without any decrease in the amount of assistance." This language, of course, was changed to read "continue ... as required by Federal law." Thus, we believe that the language **"continue ... as required by Federal law"** was included in the statute for a more specific and meaningful purpose than that suggested by Petitioners, and that purpose was to delineate the duration that child support pass-through payments would be statutorily authorized and required in this Commonwealth. To achieve the objective of *permanently* implementing the pass-through provisions in Pennsylvania, the General Assembly would have had no need to refer to federal law;[14] it simply would have ordered that it be done, without any reference to federal law whatsoever.

We must also reject Petitioners' contention that DPW failed to observe the publication, notice, and comment-period requirements of the Commonwealth Documents Law or the Regulatory Review Act when it discontinued child support pass-through payments.

■ First, Section 204 of the Commonwealth Documents Law[15] allows an ad-

---

14. This conclusion is further supported by several government documents attached as exhibits to DPW's brief, including the Governor's Executive Budget for the Fiscal Year 1997–98 which clearly indicates an amount calculated to reflect the elimination of the fifty-dollar pass-through.

15. 45 P.S. § 1204. This section provides in pertinent part as follows:

> **Omission of notice of proposed rule making**
> Except as otherwise provided by regulations promulgated by the joint committee, an agency

ministrative agency to "omit or modify" the publication requirements where the regulation relates to the interpretation of a self-executing act of assembly, and, to the extent that the vitality of pass-through payments was conditioned on the existence of federal law, we believe that the statute was self-executing. Self-executing statutes are those which are mandatory in nature and require no further legislative action in order to become effective. *See Perruso v. Township of Palmer,* 141 Pa.Cmwlth. 520, 596 A.2d 292 (1991); *Buynak v. Wilkes–Barre Police Pension Fund Association,* 404 Pa. 491, 173 A.2d 114 (1961); *Waros v. Borough of Vandergrift,* 161 Pa.Cmwlth. 538, 637 A.2d 731 (1994), *appeal dismissed,* 540 Pa. 523, 658 A.2d 786 (1995). As discussed above, we believe that the language of Section 12 of Act 35 is clear and that child support pass-through payments were expressly conditioned on the existence of that same requirement at the federal level. Thus, now that the federal government has completely eliminated the requirement that such payments be made, no further legislation is necessary to effectuate the unambiguous language of Act 35 to this extent.[16] Contrary to Petitioners' assertion, it was not DPW's Notice of Rule Change that altered the status of child support pass-through payments, but the provisions of Act 35 itself.

 Second, because the discontinuation of child support pass-through payments was directed by the statute itself and not by any legislative action on the part of DPW, DPW was exercising its interpretative powers rather than its rulemaking or legislative powers when it ended child support pass-through. It is a well-settled principle that an administrative agency may render interpre-

tive law so long as the interpretation is one that a reviewing court determines is consistent with the meaning of the statute with respect to which it is rendered. As we stated in *Jay R. Reynolds, Inc. v. Department of Labor & Industry, Prevailing Wage Appeals Board,* 661 A.2d 494 (Pa.Cmwlth.1995):

> A reviewing court should give deference to an administrative agency but also should disregard an interpretive rule if convinced that the interpretive rule is unwise or violative of legislative intent.

*Id.* at 497. Interpretive rules consistent with these principles are not subject to the publication requirements of Commonwealth Documents Law. *Id.* at 496–97. The same reasoning applies with equal force under the circumstances of this case, where an administrative agency's interpretation of a statute compels it to rescind a regulation pursuant to what it correctly perceives as a legislative mandate to do so. We believe that DPW interpreted the statute consistent with the intent of the General Assembly, and, therefore, the adoption and implementation of that interpretation is not subject to the publication requirements of the Commonwealth Documents Law. *Jay R. Reynolds, Inc.*

 This same reasoning applies with respect to Petitioners' argument that the elimination of child support pass-through announced by DPW's Notice of Rule Change was in violation of the Regulatory Review Act. As noted above, DPW was not promulgating a new rule, but adopting and implementing a *statutory* mandate to cease child support pass-through payments, as well as rescinding the regulations nullified thereby, necessitated by the absence of federal law requiring that such payments be made.

may omit or modify the procedures specified in sections 201 and 202, if:
 **(1) The administrative regulation or change therein relates to:** (i) military affairs; (ii) agency organization, management or personnel; (iii) agency procedure or practice; (iv) Commonwealth property, loans, grants, benefits or contracts; or (v) **the interpretation of a self-executing act of Assembly or administrative regulation....**
45 P.S. § 1204 (emphasis added).

16. Similarly, the federal elimination of the pass-through requirement automatically nullified 55

Pa.Code § 183.81(29), which provided for the disregard of pass-through payments in calculating monthly assistance benefits, because, absent the pass through payments, there was effectively nothing left to disregard pursuant this provision. Furthermore, we have held that, where there is a conflict between a statute and a regulation which purports to implement the statute's provisions, the regulation must give way. *Wernersville State Hospital v. Peters,* 659 A.2d 67, 69 (Pa.Cmwlth. 1995); *Tiani v. Department of Public Welfare,* 86 Pa.Cmwlth. 640, 486 A.2d 1016 (1985).

Thus, any comments solicited by DPW would have been of little value and would have served no practical purpose due to the statutory mandate that DPW cease support pass-through payments. Such comments would be more appropriately directed to the General Assembly.

Thus, because DPW's authority to disburse the fifty-dollar support pass-through payments was inextricably linked to the federal requirement that such pass-through payments be made, once that federal requirement was repealed pursuant to the express terms of federal law, DPW ceased to have the statutory authority to "continue" the child support pass-through payments.[17] Consequently, in alleging that DPW improperly eliminated child support pass-through payments and rescinded a regulation providing for the disregard of such payments, Petitioners have clearly failed to state a claim upon which relief may be granted, and we must sustain DPW's preliminary objections in the nature of a demurrer.

As a final matter, Petitioners also argue that we should not reach the "merits" of the case at this time, and that we should instead overrule DPW's preliminary objections and allow the case to proceed to trial before this Court. We disagree with this argument because we believe that the merits of this matter are before us now, and unavoidably so, because they must necessarily be considered in ruling upon DPW's demurrer. The parties in this case have entered into a lengthy joint stipulation of facts consisting of 104 individual stipulations, the obvious purpose of which was to facilitate a swift resolution and adjudication of this matter. These extensive stipulations relate to the nature of child support pass-through payments and the legislative initiatives at the state and federal levels to eliminate them, and there is absolutely no dispute between the parties that Congress removed the federal mandate to continue the pass-through program when, on August 22, 1996, it adopted PRWORA. Thus, it is obvious that the essential facts involved in this case are not disputed by either party. It would therefore be meaningless to allow this case to proceed to trial for the purpose of receiving additional evidence because a more developed record, if one was developed, would do nothing to aid us in resolving the dispute between the parties, which is essentially one of statutory construction.[18]

When the parties have already presented us with extensive arguments on the issues, in their briefs as well as orally before this Court, we would be in no better position to decide the matter after trial than we are at this stage of the proceedings.

Accordingly, for the foregoing reasons, the preliminary objections in the nature of a demurrer filed by DPW are sustained, and Petitioners' petition for review is hereby dismissed with prejudice.

### ORDER

NOW, August 20, 1997, after consideration of the Department of Public Welfare's preliminary objections and Petitioners' response thereto, the said preliminary objections filed in the nature of a demurrer are sustained, and the petition for review filed in the above-captioned matter is hereby dismissed with prejudice.

LEADBETTER, J., did not participate in the decision in this case.

JIULIANTE, Senior Judge, dissents.

---

17. We also note that no legislative measures have yet been taken by the General Assembly to continue the child support pass-through payments since the Congress enacted PRWORA and effectively ended the support pass-through requirement or since the Commonwealth implemented the TANF program.

18. We note, however, that Petitioners, in their brief, argue that, notwithstanding the stipulation of facts, "there is still a record to be made here." Yet, no further explanation is given as to what evidence Petitioners believe needs to be presented for this Court to adjudicate this matter.