**PENNSYLVANIA PHARMACISTS ASSOCIATION, Bell Edge Pharmacy, Burns Pharmacy, Cambria Pharmacy # 3, Elwyn Pharmacy, Esterson Pharmacy, Hausmann's Pharmacy, Weldon Pharmacy, and other similarly situated Pharmacies, Petitioners,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 12, 1999.

Decided June 11, 1999.

R. Christopher Raphaely, Philadelphia, for petitioners.

John A. Kane, Harrisburg, for respondent.

Before DOYLE, J., SMITH, J., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

The Department of Public Welfare (DPW) has filed seven preliminary objections to a petition for review filed in this Court's original jurisdiction by Petitioners Pennsylvania Pharmacists Association (PPA) and seven individual pharmacies (Pharmacy Petitioners) seeking declaratory, equitable and mandamus relief (Petition for Review). The Petition for Review alleges that PPA is a Pennsylvania non-profit corporation, representing over 440 pharmacists who own and operate independent pharmacies and over 1,000 pharmacists employed there. The Pharmacy Petitioners assert that they represent independent pharmacies participating in the Medical Assistance Program under Title XIX, Sections 1901–1935, of the Social Security Act (Title XIX), 42 U.S.C. §§ 1396–1396v, in the Counties of Bucks, Chester, Delaware, Montgomery and Philadelphia. Pharmacies enter into standard agreements with DPW to participate in the Medical Assistance Program (Agreements).

The Petition for Review requests a declaration that all outpatient pharmacy rates implemented under a managed-care program known as "HealthChoices" after February 1, 1997 were implemented in violation of the law and Agreements and are therefore a nullity. It requests an order enjoining DPW from permitting continued reimbursement of providers under the HealthChoices program using the current outpatient pharmacy rates and directing DPW to require reimbursement at pre-October 1995 rates. In a count in mandamus the petition seeks an order directing DPW to implement HealthChoices rates in conformance with federal and state law and an award ordering damages equal to the amount that would have been paid under the earlier rates since February 1, 1997.

DPW secured a waiver from certain provisions of Title XIX effective February 1, 1997 to implement HealthChoices in the five counties.[1] Under this program, recipients are required to receive medical ser-

---

1. The waiver from the Health Care Financing Administration applies to the following sections of Title XIX: Section 1902(a)(1), 42 U.S.C. § 1396a(a)(1), relating to statewideness; Section 1902(a)(10)(B), 42 U.S.C. § 1396a(a)(10)(B), relating to comparability of services; and Section 1902(a)(23), 42 U.S.C. § 1396a(a)(23), relating to freedom of choice. Petition for Review, Exhibit B.

vices, including pharmaceutical services, from one of four health maintenance organizations (HMOs) with which DPW has contracted. The HMOs have contracted with pharmacy benefits managers to administer the outpatient pharmacy services benefits, and they in turn have contracted with individual pharmacies. The gravamen of Petitioners' complaint is that the pharmacy benefits managers, without oversight from DPW, systematically decreased the outpatient pharmacy benefit rates to unreasonably low levels and that DPW's method of implementing the HealthChoices program to permit this result violated state and federal statutes and regulations, the Agreements and the HealthChoices waiver.

Specifically, Petitioners allege inter alia that on May 1, 1998 the pharmacy benefits manager Eagle Managed Care reduced the generic drug reimbursement to the lower of average wholesale price minus 45 percent or the Eagle Managed Care maximum allowable cost plus a $2 dispensing fee and reduced the brand name drug reimbursement to average wholesale price minus 16.5 percent plus a $2 fee. These rates were later made applicable to two of the other three HMOs involved in HealthChoices, which had changed to Eagle Managed Care as their pharmacy benefits manager. DPW allegedly was not involved in any of the rate changes.

Petitioners note that the Federal District Court in an unreported decision in *Rite Aid of Pennsylvania, Inc. v. Houstoun*, 1998 WL 631966 (E.D. Pa., No. CIV.

A. 97–2120, filed August 28, 1998), determined that the Medical Assistance Program pharmacy reimbursement rates that DPW implemented pursuant to an October 1, 1995 amendment to the State Plan for Medical Assistance (State Plan) were invalid, enjoined DPW from reimbursing pharmacies at the disputed rates and reinstated rates in effect before the amendment. Those rates were the lower of the usual and customary charge for cash-paying customers or the state maximum allowable cost or average wholesale price and a $3.50 dispensing fee for generic drugs and the lower of average wholesale price or the usual and customary charge and a $3.50 fee for brand name drugs.[2]

Petitioners aver that 229 of 448 independent pharmacies participating in HealthChoices have closed since its inception and that 35 percent of the 960 retail pharmacies originally participating in the plan had dropped out as of the end of April 1998. They allege that the rates are now set below the cost of acquisition and of dispensing the drugs that Pharmacy Petitioners supply to medical assistance beneficiaries and that this has resulted in a situation that is inconsistent with efficiency, economy and quality of care and that has decreased medical assistance beneficiaries' access to retail pharmacies under HealthChoices in violation of Section 1902(a)(30)(A) of Title XIX, 42 U.S.C. § 1396a(a)(30)(A).

Section 1396a(a)(30)(A) provides that a state plan for medical assistance must:

**2.** The issues in *Rite Aid* involved procedural challenges to DPW's adoption of an amendment to the State Plan that instituted new statewide fee-for-service rates for prescriptions, as opposed to the managed-care services under the HealthChoices program. Before this Court the parties did not have the benefit of the decision of the Court of Appeals for the Third Circuit in *Rite Aid of Pennsylvania, Inc. v. Houstoun*, 171 F.3d 842 (3d Cir. 1999). That decision reversed the District Court's grant of partial summary judgment in favor of Rite Aid and intervenor PPA, vacated the injunction, dismissed the cross appeals

and remanded the case for further proceedings. The Court of Appeals concluded that Section 1902(a)(30)(A) of Title XIX, 42 U.S.C. § 1396a(a)(30)(A), does not mandate any specific procedures for a state agency to follow in establishing rates; it requires only substantive results demanded by the statute. Further, DPW's activities of data gathering, consultation and review were not so deficient as to render its adoption of the new rates arbitrary and capricious, and, although DPW failed to fulfill its statutory duty to consult with the Medical Care Advisory Committee, that fact did not warrant the imposition of an injunction.

provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary . . . to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that the care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area. . . .

In addition, the regulation at 42 C.F.R. § 431.12, which was adopted pursuant to Section 1902(a)(4) of Title XIX, 42 U.S.C. § 1396a(a)(4), requires a state plan to provide for a medical care advisory committee that must have the opportunity to participate in policy development and program administration. Petitioners assert that DPW has failed to comply with this regulation as well.[3]

## I

DPW's first objection, a demurrer, asserts that the Petitioners have failed to state a cause of action because Section 449 of the Public Welfare Code (Welfare Code), Act of June 13, 1967, P.L. 31, *as amended,* added by Section 16 of the Act of May 16, 1996, 62 P.S. § 449, provides that any managed-care entity under contract to DPW must contract on an equal basis with any pharmacy qualified to participate in the Medical Assistance Program that is willing to comply with the HMO's payment and quality assurance standards. DPW asserts that Petitioners can point to no state or federal statute that confers a right to a certain minimum payment. Under Section 449 of the Welfare Code, the HMOs must and do offer the same terms to all, and any individual pharmacy is free to accept those terms or to decline them.

DPW notes that the requirements for an HMO to contract with a state medical assistance program are set forth in Section 1903(m) of Title XIX, 42 U.S.C. § 1396b(m). It observes that in 42 U.S.C. § 1396b(m)(2)(A)(ix) Congress adopted a requirement for payment by HMOs at some minimum level only in regard to federally qualified health centers and rural health clinics. A later amendment requires states to pay the difference between the HMO payment and the reasonable cost that these providers would have been paid under the fee-for-service program. *See* 42 U.S.C. § 1396a(a)(13)(C)(ii). DPW argues that the inclusion of provisions for a form of minimum payments by HMOs to some providers and the omission of such language in regard to others must be interpreted to reflect a different intent as to the others, including pharmacies. *See Collinsgru v. Palmyra Board of Educ.,* 161 F.3d 225 (3d Cir.1998).

Petitioners respond that the waiver DPW secured to implement HealthChoices waived certain standard requirements, but it did not waive the Section 1396a(a)(30)(A) requirement for the State to assure rates that are sufficient to enlist enough providers so that care and services are available at least to the same extent that they are available to the general population. Nor did it waive the Section 1396a(a)(4) requirement for the participation of the Medical Care Advisory Committee in making policy decisions. Further, Petitioners assert that they do not claim an entitlement to any specific rate of reimbursement – they selected the rate in effect before the HMOs' reductions because it was the last legally adopted rate, and it therefore could serve as a basis for computation of damages. On this point the Court agrees with Petitioners. This Court rejects the notion that Congress intended

---

**3.** In ruling upon preliminary objections, this Court must accept as true all well-pled allegations of material fact. *Success Against All Odds v. Department of Public Welfare,* 700 A.2d 1340 (Pa.Cmwlth.1997). A demurrer should be sustained only in cases that are free from doubt and only when it appears with certainty that the law permits no recovery under the allegations made. *Kee v. Pennsylvania Turnpike Commission,* 685 A.2d 1054 (Pa.Cmwlth.1996), *aff'd,* 548 Pa. 550, 699 A.2d 721 (1997).

to abandon the substantive results required by Section 1396a(a)(30)(A) when services are provided through mandatory participation in HMOs rather than through the usual fee-for-service system.

## II

DPW's second objection, also a demurrer, maintains that Petitioners have no enforceable right to challenge DPW's administration of the HealthChoices waiver. DPW acknowledges the requirement in the regulation relating to waiver of provisions of 42 U.S.C. § 1396a in general that an agency such as DPW must document in its request and maintain data regarding "[t]he effect of the project on the accessibility and quality of services...." 42 C.F.R. § 431.55(b)(2)(ii). DPW notes that the Health Care Financing Administration must monitor the implementation of the waiver, 42 C.F.R. § 431.55(b)(4), and that it may determine, after notice and a hearing, that an agency is not in compliance and may revoke the waiver. DPW asserts that the remedy for allegations of noncompliance with a waiver is within the exclusive purview of the Health Care Financing Administration and that Petitioners' sole remedies are to cease participation in the HealthChoices program or to petition the Health Care Financing Administration for review of their concerns.

Petitioners respond on this issue principally by asserting that their interests as providers of medical services under HealthChoices and as an organization representing numerous providers are direct, immediate and substantial. They also point out, however, that various courts have concluded that providers may bring actions to challenge state medical assistance plans. In *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the Supreme Court held that a non-profit association of public and private hospitals had an enforceable interest and had a cause of action pursuant to 42 U.S.C. § 1983 to enforce provisions of an amendment to 42 U.S.C. § 1396a(a)(13)(A) that codified a new standard for payments to certain institutional providers.

■■ The District Court in *Rite Aid of Pennsylvania, Inc. v. Houstoun,* 998 F.Supp. 522 (E.D.Pa.1997), in ruling on a motion for judgment on the pleadings before the summary judgment and appeal proceedings noted above, rejected DPW's assertion that a private party may not seek enforcement by means of 42 U.S.C. § 1983 of regulations governing fee-for-service rates adopted pursuant to 42 U.S.C. § 1396a(a)(30)(A). The Court observed that defendant Feather O. Houston, Secretary of DPW, appeared to concede that Rite Aid had a right of action to enforce the statute. This Court concludes that Petitioners have a private right of action to enforce Section 1396a(a)(30)(A). Further, DPW has not shown why the provisions of Title XIX authorizing delivery of services through an HMO should be held to abrogate the rights of patients and providers pursuant to that Section.

## III

■■ DPW's third argued objection is a challenge to this Court's jurisdiction; it asserts that Petitioners have failed to exhaust available and adequate administrative remedies. DPW notes that this Court has held that a party challenging administrative decision-making who has not exhausted available administrative remedies is precluded from proceeding in court. *Matesic v. Maleski,* 155 Pa.Cmwlth. 154, 624 A.2d 776 (1993). This doctrine ensures that the body possessing expertise in the area will hear a challenge first, and it affords agencies the opportunity to correct errors and thereby to moot judicial controversies. *Id.*

DPW contends that in this case the administrative remedy available to Petitioners is to petition the Secretary of DPW for a declaratory order pursuant to 1 Pa.Code § 35.19, and it asserts that Petitioners

have, in effect, pursued this remedy by means of their letter to the Secretary of October 27, 1998, formally requesting that DPW review the outpatient rates currently being offered to pharmacies under the HealthChoices program and recalculate them in accordance with 42 U.S.C. § 1396a(a)(30)(A) and 42 C.F.R. § 431.12.[4] DPW acknowledges that the doctrine of exhaustion of remedies is not absolute, but it argues that exhaustion has been excused only in narrow circumstances where the administrative remedy is unavailable or is inadequate. *Commonwealth ex rel. Nicholas v. Pennsylvania Labor Relations Board,* 545 Pa. 288, 681 A.2d 157 (1996).[5] Petitioners contend that exhaustion is not required because this case does not require agency expertise, exercise of discretion or fact finding. In addition, Petitioners assert that any proceeding before DPW would be futile.

■ The courts of this Commonwealth have long held that a party challenging administrative decision-making must first exhaust administrative remedies before seeking judicial review; where such remedies exist, courts lack jurisdiction. *Canonsburg General Hospital v. Department of Health,* 492 Pa. 68, 422 A.2d 141 (1980); *Colonial School Dist. v. Department of Education,* 145 Pa.Cmwlth. 74, 602 A.2d 455 (1992). This doctrine is not inflexible, and it is not applied where administrative remedies are not available or are not adequate. *Success Against All Odds v. Department of Public Welfare,* 700 A.2d 1340 (Pa.Cmwlth.1997). A remedy is not adequate if it does not allow for adjudication of the issue raised or if it permits irreparable harm to occur to the plaintiffs during the pursuit of the statutory remedy. *Id.* In addition, exhaustion has not been required in some cases where a complaint stated a direct constitutional attack upon a statute, such that administrative proceedings would contribute little to the ultimate adjudication, *Ohio Casualty Group of Insurance Cos. v. Argonaut Insurance Co.,* 514 Pa. 430, 525 A.2d 1195 (1987), or where pursuit of an existing remedy would be futile. *Pennsylvania Institutional Health Services, Inc. v. Department of Corrections,* 158 Pa.Cmwlth. 221, 631 A.2d 767 (1993).

■ DPW argues that the availability of a petition seeking a declaration from DPW pursuant to 1 Pa.Code § 35.19 is such a remedy. Also, as DPW notes, Petitioners have formally requested that Secretary Houston review the reimbursement rates now in place under the HealthChoices program and recalculate them. The Court notes that in *Brinson v. Department of Public Welfare,* 163 Pa. Cmwlth. 408, 641 A.2d 1246 (1994), a recipient who objected to being included in a predecessor, experimental managed-care medical assistance program limited to parts of Philadelphia appealed and was afforded a hearing, the result of which was appealed to DPW's Office of Hearings and Appeals and ultimately to this Court. Petitioners have advanced no compelling reason why DPW's consideration of their claims through any of these procedures is not potentially sufficient to secure the relief that they seek.

---

4. In its brief and at oral argument DPW represented to the Court that Petitioners have filed a claim before the Pennsylvania Board of Claims relating to these same allegations as well. In its reply brief DPW asserts that Petitioners filed a complaint in the District Court for the Eastern District of Pennsylvania raising federal claims identical to those in the Petition for Review.

5. Although Petitioners have not pled a cause of action pursuant to 42 U.S.C. § 1983, they note that the United States Supreme Court has held that persons who challenge violations of Title XIX under Section 1983 need not exhaust state administrative remedies unless those remedies include a comprehensive scheme to redress such violations. *Virginia Hospital Ass'n.* Further, they refer to cases holding that the doctrine of exhaustion should not be unthinkingly applied where the remedy is pointless or inadequate. *See, e.g., Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County,* 459 Pa. 268, 328 A.2d 819 (1974).

Courts should not lightly assume the futility of a party's pursuing an administrative remedy; instead, it is to be assumed that the administrative process, if given the opportunity, will discover and correct its errors. *Matesic; Colonial School Dist.* Although the position that DPW has taken in the present litigation is contrary to that of Petitioners, the Court expects that the Secretary will conduct a fair and impartial review of the issues Petitioners have raised. In addition, because the issue here involves the technical question of the interpretation and application of Title XIX, the Court concludes that initial consideration by the entity with expertise in implementing the Medical Assistance Program is appropriate. Accordingly, the Court shall sustain this objection.[6]

Petitioners have failed to exhaust an available and adequate administrative remedy; consequently, the Court lacks original jurisdiction over this matter. The Court therefore dismisses the Petition for Review without prejudice to Petitioners' right to appeal from the decision of the Secretary in the proceeding before her requesting review of the current HealthChoices outpatient pharmacy reimbursement rates. Because irreparable harm might result if the agency decision were unduly delayed, the Court shall direct that DPW provide expedited review of Petitioners' request.

## *O R D E R*

AND NOW, this 11th day of June, 1999, the preliminary objections of the Department of Public Welfare to the Petition for Review filed by Petitioners Pennsylvania Pharmacists Association et al. are sustained in regard to Petitioners' failure to exhaust administrative remedies and failure to state a cause of action in mandamus. The Petition for Review is dismissed, without prejudice to the right of Petitioners to seek review of the decision of the Secretary on Petitioners' formal request to review the outpatient pharmacy rates under the HealthChoices program. The Department is directed to provide expedited review of Petitioners' request to the Secretary.

---

**6.** DPW no longer pursues its objection to standing; its other objections may be disposed of more briefly. DPW asserts that Petitioners' claim should be barred by the doctrine of laches, where Petitioners waited some 22 months after they allegedly first were injured before bringing this action. However, this Court has held consistently that the defense of laches is an affirmative defense that is not properly raised in preliminary objections but must be raised in a responsive pleading as new matter. See, *e.g., Farmland Industries, Inc. v. Penn Dairies, Inc.*, 81 Pa. Cmwlth. 340, 473 A.2d 730 (1984). This objection is overruled.

DPW also maintains that the Petition for Review should be dismissed on the ground of *lis pendens.* That doctrine, which is designed to protect a defendant from harassment from having to defend several suits on the same cause of action at the same time, requires proof that the prior case is the same, that the parties are the same and that the relief requested is the same. *Penox Technologies, Inc.* *v. Foster Medical Corp.*, 376 Pa.Super. 450, 546 A.2d 114 (1988). Petitioners contend that *lis pendens* applies only when two or more court proceedings are involved, not when a separate proceeding is before an administrative agency. In view of the Court's conclusion that Petitioners' concerns should be and have been raised before DPW, the Court need not decide this question.

DPW's final objection states that Petitioners have failed to state a cause of action in mandamus. This issue has in effect been decided by the Court's ruling on the issue of exhaustion. In *Canonsburg General Hospital* the Supreme Court stated that a party challenging administrative decision-making may not obtain judicial relief by mandamus or otherwise without first exhausting administrative remedies. When a court determines that there is an adequate and available administrative remedy, a petitioner cannot establish the necessary element of a want of any other appropriate and adequate remedy. *See id.* Therefore, the Court sustains this objection.