**CITIZENS' AMBULANCE SERVICE INC., Appellant**

**v.**

**GATEWAY HEALTH PLAN, Appellee**

Superior Court of Pennsylvania.

Submitted April 15, 2002.
Filed Aug. 29, 2002.

444

Michael N. Vaporis, Indiana, for appellant.

David Walulik, Pittsburgh, for appellee.

Kathleen Grogan, Harrisburg, for Pa. Department of Public Welfare, amicus curiae.

Douglas M. Wolfberg, Mechanisburg, for Ambulance Association of Pa., amicus curiae.

David B. Chontos, Turtle Creek, for Ambulance Commission of the City of McKeeport, amicus curiae.

Before: LALLY–GREEN, TODD, and HESTER, JJ.

TODD, J.:

¶ 1 Citizens' Ambulance Service ("Citizens") appeals the trial court's September 21, 2001 Order sustaining the preliminary objections of Appellee Gateway Health Plan ("Gateway") on the basis that it lacked subject matter jurisdiction because Citizens had not exhausted its administrative remedies prior to filing suit in the Court of Common Pleas of Indiana County. Upon review, we reverse and remand.

¶ 2 Citizens is a not-for-profit corporation that provides emergency and non-emergency ambulance service in Indiana County and in portions of adjoining counties. Citizens is licensed by the Commonwealth of Pennsylvania to provide this service and, by law, must respond to an emergency call from the 911 dispatcher unless it is unable to do so. *See* 28 Pa. Code § 1005.10(e)(4). In 1986, Citizens signed a medical assistance provider agreement with the Pennsylvania Department of Public Welfare ("DPW"). This agreement obligated Citizens to accept the DPW's set reimbursement rates for covered ambulance services rendered to medical assistance recipients. At this time, DPW operated the medical assistance pro-

gram on a fee for services rendered basis and contracted separately with each provider for covered services to recipients.

¶ 3 Gateway is a for-profit health maintenance organization. Since 1993, Gateway has contracted with DPW [1] to provide medical services to medical assistance recipients within a specified geographic region under a managed care, as opposed to fee for service, approach. This region includes the area served by Citizens. Initially, participation in this program was optional for medical assistance recipients. In 1998, however, participation became mandatory.

¶ 4 Gateway's contract with DPW obligates Gateway to "arrange for the provision of those medical and related services essential to the medical care of those individuals being served ...." (Healthchoices Southwest Physical Health Agreement Between Commonwealth of Pennsylvania and Gateway Health Plan, Inc. (the "DPW–Gateway Agreement"), 7/01/98, at 5.) In addition, the request for proposal upon which the DPW–Gateway Agreement is based and which is incorporated by reference into the agreement, provides that Gateway "is responsible to provide all medically necessary emergency transportation" and "must arrange medically necessary non-emergency transportation ... through the MATP [Medical Assistance Transportation Program]." (Request for Proposal for Healthchoices Physical Health Services (the "RFP"), 10/22/97, at 55.) The record does not reveal whether Citizens is part of the MATP.

¶ 5 On February 26, 2001, Citizens initiated the present action by filing a complaint against Gateway in the Court of

1. Gateway entered into three separate contracts with DPW, dated April 1, 1993, May 1, 1998 and July 1, 1998, covering the applicable time period. Because the relevant provi-

sions of these agreements are similar, if not identical, for the sake of brevity we shall refer only to the most recent of the contracts.

Common Pleas of Indiana County. In its three-count complaint, Citizens sought payment for emergency and non-emergency ambulance services provided to medical assistance recipients who were enrolled with Gateway pursuant to the DPW–Gateway Agreement. Citizens averred that since 1996 Citizens had billed Gateway for those services at the rate that it charges the general public, but that Gateway had refused to pay the charges as billed. Instead, Gateway had reimbursed Citizens at the significantly lower reimbursement rate set by DPW for reimbursement of ambulance service costs under its fee for service program. In its complaint, Citizens set forth three theories of recovery: (1) breach of contract under a third-party beneficiary theory under the DPW–Gateway Agreement; (2) breach of contract under a third-party beneficiary theory under the contracts between Gateway and the individual medical assistance recipients; and, (3) unjust enrichment.

¶ 6 In response, Gateway filed preliminary objections arguing that the trial court lacked subject matter jurisdiction because Citizens had failed to exhaust its administrative remedies prior to bringing suit. Gateway also demurred to the breach of contract counts on the basis that Citizens had failed to state a claim upon which relief could be granted and further argued, in the alternative, that the breach of contract claims, if cognizable, were subject to alternative dispute resolution provisions in both the DPW–Gateway Agreement and in the Gateway Members Handbook. The trial court sustained Gateway's preliminary objections and specified in its opinion that the basis for its decision was its determination that the Court of Common Pleas of Indiana County lacked subject matter jurisdiction because Citizens had failed to exhaust its administrative remedies before bringing suit.

¶ 7 In this timely appeal,[2] Citizens asks us to consider a single question: "Based on the averments contained in the complaint, was there an administrative remedy available to [Appellant] which it was required to exhaust before filing this action?" (Appellant's Brief, at 4.) Specifically, Citizens argues that the trial court erred in holding that it had an adequate administrative remedy that it was required to exhaust because DPW lacks jurisdiction over a dispute between private parties and because DPW has no power to award the relief requested. We agree.

 ¶ 8 In sustaining Gateway's preliminary objections, the trial court stated:

it appears to this Court that [Citizens] is challenging the [medical assistance] rate set by the DPW and paid by [Gateway] under the [medical assistance] Program. The DPW does provide remedies as part of [its] oversight of the [medical assistance] Program. [Citizens] has the option of filing a complaint with DPW's Office of Hearings and Appeals or directly petitioning DPW for a declaratory order from the Office of Hearings and Appeals concerning the rate of reimbursement to which it is entitled as a non-participating provider of [medical assistance] Program benefits.

(Trial Court Opinion, 9/21/01, at 5.) In reaching this decision, the trial court relied upon the Commonwealth Court's holding[3]

---

2. We note that Citizens originally filed its notice of appeal to the Commonwealth Court of Pennsylvania, but that the Commonwealth Court transferred the present case to this Court by order dated October 18, 2001 on the basis that it lacked jurisdiction.

3. We note that while decisions of the Commonwealth Court may be persuasive, they are not binding on this Court. *Kraus v. Taylor*, 710 A.2d 1142, 1144 (Pa.Super.1998) ("Although we frequently turn to the wisdom of our colleagues on the Commonwealth Court

in *Pennsylvania Pharmacists Assoc. v. Dept. of Public Welfare*, 733 A.2d 666 (Pa. Commw.1999), that "a party challenging administrative decision-making who has not exhausted available administrative remedies is precluded from proceeding in court." *Id.* at 671. It is well settled, however, that the exhaustion requirement applies only where adequate administrative remedies exist and are available. Indeed, in *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977), our Supreme Court noted:

> As with all legal rules, the exhaustion of administrative remedies rule is neither inflexible nor absolute .... Thus, a court may exercise jurisdiction where the administrative remedy is inadequate. The mere existence of a remedy does not dispose of the question of its adequacy; the administrative remedy must be "adequate and complete."

*Id.* at 6–7, 383 A.2d at 793–794 (citations omitted).

■ ¶ 9 In the present case, Gateway has not shown that Citizens has available an adequate and complete administrative remedy. While Gateway argues that the DPW has exclusive authority to set medical assistance reimbursement rates, Citizens is not challenging any rate set by DPW. Indeed, neither Gateway nor DPW asserts that DPW has set reimbursement rates for subcontractors of its managed care health maintenance organizations. Instead, Citizens seeks to recover directly from Gateway at "private rates" for services rendered to medical assistance recipients enrolled in the Gateway managed care program. In contrast, Gateway's position is that it will pay Citizens only the amount set by DPW for direct payment to ambulance service providers under the fee for service program. Neither Gateway nor DPW have cited to any provision of law or contract that requires Citizens to accept the DPW rate as reimbursement for services provided to Gateway's managed care medical assistance clients.[4] That Gateway claims, at least by implication, that the DPW reimbursement is a fair measure of the value of Citizens' services does not remove this dispute between private parties from the jurisdiction of the Court of Common Pleas.

■ ¶ 10 Similarly, we agree with Citizens that even if it was to pursue a remedy through DPW, DPW has no authority to award damages or to compel Gateway to pay any amount to Citizens. Thus, any administrative remedy available to Citizens is inadequate to provide the relief sought via the present litigation. *See Feingold*, 477 Pa. at 10–11, 383 A.2d at 795–96.

¶ 11 In *Feingold*, the plaintiffs sued Bell of Pennsylvania for damages arising out of the telephone company's alleged disconnection of a forwarding device, disconnection of telephone service and refusal to provide requested mobile phone service. The trial court sustained Bell of Pennsylvania's preliminary objections on the basis that the plaintiffs had failed to exhaust the administrative remedies available through the Public Utility Commission ("PUC").

for guidance, the decisions of that court are not binding on this Court.").

4. We do not agree that Citizens' 1986 Provider Agreement obligates Citizens to accept the DPW rate as reimbursement from Gateway for services that Citizens provided to Gateway's managed care clients. That agreement governed direct reimbursement from DPW to Citizens for covered ambulance services rendered to medical assistance recipients on a fee for services basis. Similarly, we do not find the August 29, 1997 letter to Michael J. Markilinski of the Ambulance Association of Pennsylvania from Patricia S. Jacobs, then Project Manager for HealthChoices at DPW, to be dispositive of the issue of jurisdiction.

The Supreme Court reversed, holding that the available administrative remedies were not adequate and complete because in addition to equitable relief, the plaintiffs sought punitive and compensatory damages and the PUC was not authorized to award the damages sought. *Id.* In so doing, our Supreme Court noted that "[i]n the instant case, appellant could not have been made whole by the PUC, thus the administrative remedy was not 'adequate and complete.'" *Id.* at 11, 383 A.2d at 796. The same is true in the case before us.

¶ 12 We are not persuaded by DPW's argument in its brief as *amicus curiae* that Citizens should be required to bring this dispute before it because DPW is responsible for administering the medical assistance program regardless of whether care is delivered on a fee for services or managed care basis. DPW does not assert that it has any power to award damages to Citizens or to compel compliance by Gateway. Only the Court of Common Pleas has such authority and it is there that the dispute between these parties must be adjudicated.

¶ 13 We similarly are not persuaded by Gateway's argument that DPW has primary jurisdiction to adjudicate this dispute. In support of this argument, Gateway relies upon *Elkin v. Bell Telephone Co. of Pennsylvania*, 491 Pa. 123, 420 A.2d 371 (1980). In *Elkin*, our Supreme Court described primary jurisdiction as a doctrine that "creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence." *Id.* at 131–32, 420 A.2d at 376. This doctrine "requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency

which administers the scheme." *Id.* at 132, 420 A.2d at 376 (citations omitted).

¶ 14 In *Elkin*, a business customer sued seeking monetary damages for the telephone company's alleged failure to provide "reasonable, rapid and efficient" telephone service. Upon the telephone company's preliminary objections, the Court of Common Pleas stayed the matter pending adjudication by the PUC of whether the telephone company had provided "reasonably continuous and adequate telephone service." *Id.* at 128, 420 A.2d at 373, 374.

¶ 15 The Supreme Court upheld the bifurcated procedure, distinguishing *Feingold* on the basis of the procedural differences between the two cases, and holding specifically that:

> where the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility. In such cases, it would be wasteful to employ the bifurcated procedure of referral, as no appreciable benefits would be forthcoming.

*Id.* at 134–35, 420 A.2d at 377 (emphasis original) (footnote omitted).

¶ 16 We observe that the present case is procedurally identical to *Feingold*, and thus distinguishable from *Elkin*, on the basis that in the present case, the trial court merely sustained the preliminary objections and dismissed the action instead of

staying the case pending resolution of a particular issue by DPW. Moreover, based on the averments of the complaint in the present action, we do not believe that it is such a complex matter requiring special agency expertise.[5] Thus, contrary to Gateway's arguments, *Elkin* does not compel us to uphold the trial court's action in the present case.

¶ 17 Finally, both Gateway and DPW argue that the need for statewide uniformity and consistency mandates that the present dispute be adjudicated by DPW. We disagree. As discussed above, DPW has not set statewide reimbursement rates for subcontractors under its managed care program. The outcome of the present case, therefore, will not create an exception to an otherwise consistent reimbursement rate. Indeed, DPW acknowledges in its brief that "[a]s a general matter, in a managed care delivery system, such as HealthChoices ... the managed care organizations negotiate and ultimately agree to a rate of reimbursement with the various providers of service without any involvement of DPW." (DPW's Brief, at 9 n. 5.) Moreover, it is not unreasonable to assume that in a state as large and regionally diverse as Pennsylvania, reimbursement rates for ambulance services, whether determined by contract or under a theory of unjust enrichment, may vary.

¶ 18 We hold, therefore, that the trial court erred in sustaining Gateway's preliminary objections and dismissing the present action on the basis that Citizens had failed to exhaust its administrative remedies.[6] Accordingly, we reverse the order of the Court of Common Pleas and remand this matter for further proceedings consistent with this opinion.

¶ 19 Reversed and remanded. Jurisdiction relinquished.

---

**5.** In contrast, in *Pennsylvania Pharmacists, supra,* the Commonwealth Court required exhaustion of administrative remedies before a pharmacists' organization and individual pharmacists could sue to challenge DPW's implementation of the HealthChoices program as to pharmacies. In that case, the plaintiffs averred the DPW had implemented the program in a manner that permitted pharmacy benefits managers of the managed care programs to set unreasonably low reimbursement rates without oversight by DPW. The Commonwealth Court held that exhaustion was appropriate in that case because it would permit DPW the opportunity to discover and correct any administrative errors without

court involvement and because resolution of the matter would involve the technical questions regarding the interpretation and application of Title XIX of the Social Security Act, 42 U.S.C. §§ 1396. *Pennsylvania Pharmacists,* 733 A.2d at 666.

**6.** Because the trial court did not rule on the alternative arguments set forth by Gateway in its preliminary objections, we will not address those arguments here. Instead, we leave it to the trial court to resolve Gateway's preliminary objections to Citizens' breach of contract claims.