**EXECUTIVE RISK INDEMNITY, INC., Appellee**

v.

**CIGNA CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2013.

Filed July 18, 2013.

Reargument Denied Sept. 27, 2013.

Maureen M. McBride, West Chester, for appellant.

Ronald P. Schiller, Philadelphia, for appellee.

BEFORE: LAZARUS, J., OTT, J., and STRASSBURGER, J.*

OPINION BY LAZARUS, J.

Cigna Corporation (Cigna) appeals from the trial court's order denying its request for a judgment notwithstanding the verdict (JNOV)/new trial and reaffirming its prior order entering declaratory judgment in favor of Appellee, Executive Risk Indemnity,

* Retired Senior Judge assigned to the Superior Court.

Inc. (Executive Risk), and against Cigna on all claims. After careful review, we affirm.

■ The underlying litigation involves an insurance coverage dispute between Cigna, as an insured, and its excess insurer, Executive Risk. After Cigna settled[1] class-action claims[2] for breach of contract and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO),[3] it submitted a claim to Executive Risk for indemnification of settlement payments and defense costs. Executive Risk refused to indemnify Cigna and, in fact, Executive Risk filed a complaint seeking declaratory judgment against Cigna; Cigna counterclaimed, seeking a declaration that Executive Risk had an obligation to indemnify it. In addition, Cigna brought a bad faith claim against Executive Risk arising from its failure to provide timely coverage.

After an extensive discovery process, the parties filed cross-motions for summary judgment. On March 19, 2008, the trial court granted Executive Risk's motion on all claims and denied Cigna's motion. The court essentially concluded that Cigna's settlement of the breach of contract and RICO claims fell within the breach of contract exclusion in its professional liability policy. Cigna appealed and this Court issued a decision reversing summary judgment, finding that while the breach of contract claims were excluded under the policy, *Executive Risk*, 976 A.2d at 1173, the RICO claims fell within the policy definitions of "claim" and "loss" and within the general terms of the policy. *Id.* at 1174. Our Court also remanded the case to the trial court so that it could address the "allocation of claims between the covered RICO claims and excluded breach of contract claims." *Id.* at 1175. The Court found that because the case had settled, an allocation trial/hearing was necessary so that indemnification could be properly distributed between the covered and excluded claims.

The Honorable Mark I. Bernstein heard arguments and accepted evidence on the allocation issue for two days in November 2010, placing the burden upon Cigna to prove the allocation of settlement monies between the two classes of claims.[4] At the hearing, neither party produced expert testimony to opine what, in retrospect, the allocation of funds should have been at the time of settlement. The court reasonably allocated $3,827,287 each, for attorneys' fees and defense costs solely for the parties' contract claims. However, there was insufficient evidence to prove what percentage of those defense costs went toward defending solely covered claims and what portion of attorneys' fees were being paid on which class of claims. Ultimately, the trial court found that Cigna failed to meet

---

1. The claims were settled in 2003 for approximately $170 million. Approximately $55 million of that settlement represented plaintiffs' attorneys' fees.

2. The claims were part of a multi-district litigation where doctors countrywide sued HMOs, including Cigna, alleging the providers had been systematically underpaying claims by billions of dollars for more than a decade. Specifically, the complaints charged that Cigna conspired with other insurance companies to keep the payments improperly low. *Executive Risk Indemnity, Inc. v. CIGNA Corp.*, 976 A.2d 1170, 1171 (Pa.Super.2009).

The lawsuits are generally referred to as the *Mangieri, Shane* and *Kaiser* cases. Eventually, *Mangieri* and *Shane* were consolidated under *Shane*. In 2003, CIGNA settled the *Shane* and *Kaiser* cases together under the United States District Court case, *In re Managed Care Litigation*, MDL No. 1334 (S.D.Fla., Oct. 24, 2003).

3. 18 U.S.C.S. § 1961, *et seq.*

4. CIGNA sought $55 million in payments made to underlying plaintiffs' counsel as part of the settlement as well.

its burden and reaffirmed its prior judgment entered in favor of Executive Risk on all claims. Cigna filed post-trial motions that were denied. This appeal follows.

On appeal of a trial court's denial of a motion for JNOV,[5] the Pennsylvania Superior Court will reverse the trial court only upon a finding of an abuse of discretion or error of law that controlled the outcome of the case. *Eichman v. McKeon*, 824 A.2d 305, 311–12 (Pa.Super.2003). Additionally, where credibility and the weight to be accorded the evidence are at issue, this Court will not substitute its judgment for that of the fact-finder. *Id.* at 312.

Cigna states its issues on appeal as follows:

(1) Where an insured sought coverage under its own professional liability policy, did the trial court err in concluding that the *insured*, rather than the *insurer*, bore the burden of proving whether the policy's exclusion of contract claims applied to a nationwide class action settlement?

(2) If the insurer, not the insured, bore the burden of proving that the policy's exclusion of contract claims applied to a nationwide class action settlement, did the trial court err in failing to conclude that the insurer failed to prove that 100% of the settlement amount was excluded under the policy?

(3) Whether, regardless of who bore the burden of proof on allocation between covered and excluded claims, the trial court erred and/or abused its discretion in concluding that the insured failed to prove that at least 75% percent of the class action settlement amount was attributable to RICO-related claims and, thus, did not fall within the policy's exclusion for breach of contract claims?

In *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646 (1995), our Court reiterated the appropriate burden apportionment and shifting in insurance coverage cases, stating "[t]he insured must show that the policy covers its claim, and then the burden shifts to the insurer to establish an exclusion." *See also Erie Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 533 A.2d 1363, 1366 (1987) (in coverage cases, insured must show claim comes within coverage provided by policy; defense based on policy exception or exclusion is affirmative one which insurer has burden to establish).

Instantly, the parties do not dispute that the breach of contract claims were properly excluded from coverage under the parties' insurance policy or that the RICO claims are covered claims. The trial court, however, required proof of exactly how much of the $140 million settlement proceeds applied toward those excluded claims so it could properly assess Executive Risk's obligation to indemnify Cigna

---

**5.** Similarly, our standard of review of a denial of a motion for new trial is limited to a determination of whether the trial court committed an error of law that controlled the outcome of the case, or committed an abuse of discretion. *Fanning v. Davne*, 795 A.2d 388 (Pa.Super.2002).

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly un-

reasonable, or the judgment is the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous. *Id.* at 393.

for the covered RICO claims. While the court was able to determine that the $40 million of the Claim Distribution Fund payments, roughly $3.8 million in defense costs and $3.8 million in attorneys' fees were attributable solely to contract claims, the remaining settlement funds were not apportioned between the two types of claims. *See* Trial Court Opinion Conclusions of Law, 3/23/12, at ¶¶ 1–4.

The first two issues on appeal concern which party must bear the burden of apportioning those claims that are in fact covered under a policy, versus those that are excluded. Apportionment is not a straightforward process in the context of a settlement agreement. *See Executive Risk*, 976 A.2d at 1174–75 ("Although three parts to RICO to every one part actual damages is certainly an easy calculation, it is not necessarily the proper calculation."). While the trial court did not see the task of allocation as relating "to anything having to do with an insurance policy," N.T. Allocation Hearing, 11/8/2010, at 70, the trial judge deemed allocation as a process that relates to a finding of fact as to the intent at the time of settlement between Cigna, the insured, and the plaintiff-doctors. *Id.* at 71.

At the two-day apportionment hearing, held in November of 2010, Executive Risk argued that Cigna was unable to prove that it had reached the threshold $65 million in covered claims to even trigger its excess coverage.[6] No outside expert or claims representative testified regarding the appropriate retrospective apportionment analysis of the covered RICO claims.

CIGNA asserts the allocation burden is one in which the insurer should prove those claims (i.e., breach of contract) that are *excluded* from coverage under the parties' policy, once the insured, CIGNA, has already *prima facie* proved coverage. We decline to accept this position; proof of a policy exclusion and proof of allocation of excluded policy claims are distinctly different inquiries.

We agree with the trial court that the insured is the party that should bear the burden of proof for apportionment of claims in this case. This determination is vital to the insurer for purposes of indemnification and is best proven by the insured, the party that has access to the evidence and the parties' intent behind the settlement process. This is especially true where the final settlement is based upon the claim forms which detail the individual contract breaches and resultant damages.[7] In the instant case, the parties were equally sophisticated entities, CIGNA drafted the settlement agreement, chose counsel to participate in the settlement negotiations, controlled the underlying litigation and defense and had better access to the relevant information and intentions of the parties in the deliberative settlement process. Therefore, it is not only reasonable, but logical, that the insured bears the burden to allocate.

Instantly, CIGNA drafted the settlement agreement and was fully aware that allocation between the classes of claims would become a coverage issue. *See* Ex-

6. As an excess insurer, Executive Risk's coverage attached only at $65 million; even after that point, Executive Risk had only a 20% *pro rata* share of the next $50 million available in coverage.

7. We do, however, acknowledge, that the result may have been different if there were evidence of Executive Risk's breach of a duty

to CIGNA. *See International Communication Materials, Inc. v. Employer's Ins. of Wausau*, 1996 U.S. Dist. LEXIS 21825 (W.D.Pa.1996) (where insurers failed to undertake defense of claims, insured bore burden of apportioning settlement payment between covered and excluded damages).

ecutive Risk Exhibit 41, 6/12/2003 Memorandum from Randy Evans to CIGNA MDL Managed Care Insurers. Although CIGNA periodically gave Executive Risk updates regarding the status of the settlement negotiations, albeit in general plaintiff class-specific terms, CIGNA also specifically told its insurers that it did not want Executive Risk representatives to attend or participate in the mediation for fear that the insurer's presence would drive up settlement demands because the plaintiffs would infer that coverage was available. CIGNA Exhibit 207, 6/19/2003 Letter from Kim Marrkand to J. Randolph Evans, at 2. Moreover, as our Court noted in CIGNA's prior appeal, "a settlement typically represents concessions made by both parties." *Executive Risk*, 976 A.2d at 1174. Accordingly, as a third-party who was not privy to the settlement process, it is difficult for Executive Risk to determine "what portion of the settlement is meant for what aspect of the claims made." *Id.* at 1174–75. For these reasons, we find that the trial court properly placed the allocation burden on CIGNA in the underlying case.

In its final issue, CIGNA claims that the trial court erred in finding that it failed to prove that at least 75% of the class action settlement was attributable to the RICO-related claims and, therefore, were not excluded as breach of contract claims.

CIGNA asserts that it presented substantial evidence at the apportionment hearing to show that the parties intended the settlement to represent a 75%/25% ratio of RICO versus breach of contract claims. Essentially, CIGNA supports this ratio with the claim that the RICO claims dominated the breach of contract claims in the settlement process and that the former were the driving force and focus of the settlement negotiations in the underlying case. The trial judge, however, found as facts that: (1) CIGNA's counsel, John Harkins, stated (contemporaneously with the *Shane/Kaiser* settlement) that the RICO claims were weak; (2) CIGNA failed to meaningfully assess its RICO exposure in any memoranda or other litigation correspondence; (3) CIGNA had only performed assessments for contract exposure and represented to the court that these claims were at the heart of the case; and (4) that CIGNA's settlement was contract-focused. Trial Court Opinion, 11/15/2011, at 9–14, 16–18. Because the trial judge, as the trier of fact, made the credibility determination that there was insufficient evidence to support the 75%/25% ratio, and our review of the record has not shown that he abused his discretion in coming to that decision, we must affirm.

Order affirmed.

STRASSBURGER J., files a Dissenting Opinion.

## DISSENTING OPINION BY STRASSBURGER, J.

I respectfully dissent.

At the outset of the "Discussion" portion of his opinion, the learned trial judge posed the issue

The following question is presented in this case: How did CIGNA and plaintiffs' counsel allocate the class-action settlement funds when they settled the Managed Care Class Action lawsuit? The case does not ask how the settlement funds should have been allocated. Neither is [the trial court] free to now make a theoretical reasonable settlement allocation. The question presented is one of historical fact.

Trial Court Opinion, 11/15/2011, at 20.

Unfortunately, the issue posed is exactly the wrong one. Allocation of funds for the

purposes of CIGNA's later insurance litigation with ERI was never at issue during the original settlement. The plaintiffs in the underlying action simply wanted to recover from CIGNA. Whether and how those funds were allocated later was of no matter. CIGNA could have inserted a provision in the settlement agreement that the entire payment was on the RICO claims. The doctors would not have cared. But guaranteed, Executive Risk would be here arguing that the appropriate question is how the settlement funds should have been allocated.

Because the trial court tried the wrong issue, the Majority is affirming the wrong finding. Thus, I would remand for a determination of how the settlement funds should have been allocated.