David and Frances GRAVER,
h/w, Appellees

v.

FOSTER WHEELER CORPORATION

Appeal of Foster Wheeler, LLC, Surviv-
or to a Merger with Foster Wheel-
er Corporation, Appellant.

David and Frances Graver,
h/w, Appellants

v.

Foster Wheeler Corporation, LLC,
Survivor to a Merger with Foster
Wheeler Corporation, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 16, 2012.

Filed June 26, 2014.

Reargument Denied Aug. 26, 2014.

Maria K. Karos, Dallas, TX, for Foster Wheeler.

Robert E. Paul, Philadelphia, for Graver.

BEFORE: PANELLA, J., OLSON, J., and FITZGERALD, J.*

OPINION BY PANELLA, J.

The instant matter involves cross appeals arising from an asbestos mesothelioma case. Although both parties have raised a number of issues for our consideration, we find it necessary to reach only one. That issue is whether the statute of repose for improvements to real property set forth in 42 PA. CONS.STAT.ANN. § 5536 bars asbestos personal injury claims against entities engaged in performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property. We determine that it does.

David Graver, now deceased, was employed at Pennsylvania Power and Light's ("PP & L") Holtwood Steam Plant from 1983 until his retirement in 2010. *See* Trial Court Opinion, 12/28/11, at 3. Within the plant was a boiler designed by Foster Wheeler Corporation ("Foster Wheeler"). *See id.* at 5. The boiler was 11 to 13 stories

---

* Former Justice specifically assigned to the Superior Court.

tall, and it is undisputed that it contained asbestos products. *See id.* During his employment, Mr. Graver alleges he was exposed to asbestos emanating from the boiler's insulation causing him to develop mesothelioma. *See id.* at 3. As a result, he and his wife sued Foster Wheeler.

Prior to trial, Foster Wheeler filed a motion for summary judgment claiming the statute of repose barred the Gravers' claims against it. *See* Foster Wheeler's Motion for Summary Judgment (filed July 13, 2011). The trial court denied the motion. *See* Trial Court Order Denying Foster Wheeler's Motion for Summary Judgment (filed July 27, 2011). Upon conclusion of the Gravers' case, Foster Wheeler filed a motion for compulsory nonsuit again alleging the relevant statute of repose bars suit against it. *See* Foster Wheeler's Motion for Compulsory Nonsuit (filed September 26, 2011). The trial court also denied this motion. *See* Reproduced Record[1] ("R.R.") 1840a, at 91.[2]

A jury found in favor of the Gravers. *See* Trial Court Opinion, 12/28/11, at 2. Mr. Graver received a gross verdict of $3 million dollars, and Mrs. Graver obtained a $1.5 million dollar verdict for loss of consortium. *See id.* The trial court molded these verdicts based on the jury's finding that five settling defendants were also liable. *See id.* Accordingly, the trial court reduced the verdicts by one-sixth for a modified verdict of $500,000 for Mr. Graver and $250,000 for Mrs. Graver. *See id.* at 3. Both parties filed post-trial motions,[3]

which the trial court denied. Each party filed a timely appeal.

■ The dispositive issue arises from Foster Wheeler's claim that the statute of repose for improvements to real property contained in 42 Pa. Cons. Stat.Ann. § 5536 bars all of the Gravers' claims against it. The Gravers dispute this contention by claiming, *inter alia,* there is no statutory right to repose in asbestos cases pursuant to *Abrams v. Pneumo Abex Corp.,* 602 Pa. 627, 981 A.2d 198 (2009). We begin by addressing our standard and scope of review.

■ Since we are presented with the trial court's denial of a motion notwithstanding the verdict, we will reverse only upon finding an abuse of discretion or an error of law that controlled the outcome of the case. *See Executive Risk Indem., Inc. v. Cigna Corp.,* 74 A.3d 179, 182 (Pa.Super.2013) (citation omitted).

The relevant statute of repose states in part:

(a) **General rule.** Except as provided in subsection (b), a civil action or proceeding against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of the construction of such improvement to recover damages for:

(1) Any deficiency in the design, planning, supervision or observation of

---

1. For ease of reference, we refer to the reproduced record. We verified that the transcripts are in the certified record.

2. Portions of the reproduced record contain multiple pages of testimony on a single page. When this is the case, the Court will also provide a pinpoint citation to the relevant page(s) of testimony.

3. Foster Wheeler presented its argument that the statute of repose bars the Gravers' claim in a post-trial motion for judgment notwithstanding the verdict. *See* Foster Wheeler's Motion for Post–Trial Relief in the Nature of a Motion for Judgment Notwithstanding the Verdict (filed October 17, 2011).

construction or construction of the improvement.

\* \* \*

(3) Injury to the person or for wrongful death arising out of any such deficiency.

\* \* \*

**(b) Exceptions.**

(1) If any injury or wrongful death shall occur more than ten and within 12 years after completion of the improvement a civil action or proceeding within the scope of subsection (a) may be commenced within the time otherwise limited by this subchapter, but not later than 14 years after completion of construction of such improvement.

\* \* \*

42 PA. CONS.STAT.ANN. § 5536(a)-(b).

The trial court determined the boiler at issue was an improvement contemplated within the statute of repose; however, it declined to apply the statute based on what it classified as "strong *dicta*" from *Abrams* indicating there is no statutory right to repose in asbestos cases. *See* Trial Court Opinion, 12/28/11, at 9. Foster Wheeler claims *Abrams* is inapplicable because it does not address the statute of repose at issue, but instead concerns the statute of *limitations* for asbestos-related claims located at 42 PA. CONS.STAT.ANN. § 5524(8).[4] We agree with Foster Wheeler, and find the trial court's reliance on *Abrams* to be misplaced. Before addressing *Abrams*, we must first examine the differences between statutes of repose and statutes of limitations.

■ Both statutes are similar in that they establish the time in which a plaintiff must bring a cause of action. One key distinguishing characteristic is the *triggering act* that commences this period. Generally, statutes of limitations begin to run when the cause of action accrues. *See* 42 PA. CONS.STAT.ANN. § 5502(a). Accrual occurs when the right to institute a suit arises, typically when the plaintiff suffers harm.[5] *See Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042 (Pa.Super.1999) (citations omitted).

■ "A statute of repose, as opposed to a statute of limitations, is '[a] statute barring any suit that is brought after a specified time since the defendant acted ... even if this period ends before the plaintiff has suffered a resulting injury.'" *Conway v. Cutler Grp., Inc.*, 57 A.3d 155, 163 n. 5 (Pa.Super.2012) (*quoting* BLACK'S LAW DICTIONARY 1451 (8th ed. 2004)), *petition for allowance of appeal granted on other grounds*, 77 A.3d 1257 (Pa.2013). Put simply, statutes of repose begin to run upon the completion of certain conduct by a defendant. For instance, the statute of repose currently under consideration begins to run "after completion of construction of such improvement [to real property] ...." 42 PA. CONS.STAT.ANN. § 5536(a). Consequently, since statutes of repose focus solely on a defendant's actions, it "[may] potentially bar a plaintiff's suit before the cause of action arises ...." *McConnaughey v. Building Components,*

---

**4.** Now 42 PA. CONS.STAT.ANN. § 5524.1. The legislative act that amended the statute of limitations for asbestos claims was declared unconstitutional by *Commonwealth v. Neiman*, 84 A.3d 603 (Pa.2013), for failure to comply with the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. The decision was subject to a 90–day stay effective Dec. 16, 2013. The repeal took effect March 17, 2014. *See* 42 PA. CONS.STAT. ANN. § 5524.1, Historical and Statutory Notes.

**5.** This rule is subject to certain exceptions, but it is unnecessary to discuss these exceptions since they do not implicate the ultimate issue before us.

*Inc.*, 536 Pa. 95, 637 A.2d 1331, 1332 n. 1 (1994).

■ Another distinguishing characteristic is the corresponding legal effect of each statute. Statutes of limitations are a form of procedural law that bar recovery on an otherwise viable cause of action. *See Miller v. Stroud Township*, 804 A.2d 749, 752 (Pa.Cmwlth.2002).[6] Conversely, statutes of repose operate as substantive law by extinguishing a cause of action outright and precluding its revival. *See id.* With these considerations in mind, we turn our attention to the text of the statute.

Our function in interpreting a statute is to ascertain and effectuate the intent of the General Assembly. *See* 1 PA. CONS. STAT.ANN. § 1921(a). The Statutory Construction Act commands, "[w]hen the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 PA. CONS.STAT.ANN. § 1921(b). It is only when the words of a statute are not explicit that a court may rely on established rules of statutory construction. *See* 1 PA. CONS.STAT.ANN. § 1921(c).

Generally, the relevant statute of repose bars claims filed 12 years after the completion of an improvement to real property. *See* 42 PA. CONS.STAT.ANN. § 5536(a). Here, Foster Wheeler completed the boiler in 1955.[7] This would require a claimant to file suit by 1967. The Gravers' cause of action was not initiated until 2010–43 years after the deadline imposed by the statute of repose. Clearly, it appears the statute functions to bar suit against Foster Wheel-

er. The Gravers present three arguments why the statute is inapplicable in this case.

First, they claim that Foster Wheeler is a manufacturer and supplier of metal products and asbestos insulation, and not a designer of improvements to real property. *See* Appellee's Brief at 14. Thus, they claim that since Foster Wheeler's asbestos insulation was merely integrated into the boiler at issue, they cannot seek shelter from liability under the statute of repose. The Gravers also claim that the asbestos insulation is not an "improvement" contemplated within the statute. We find no merit to these contentions.

The trial court found that Foster Wheeler was involved in the overall design and construction of the boiler in question. *See* Trial Court Opinion, 12/28/11, at 5. The record supports such a finding. Clearly, Foster Wheeler's role was not limited to merely supplying insulation. Instead, PP & L's general contractor, EBASCO, contracted with Foster Wheeler to design the boiler used at the Holtwood Plant. *See* R.R. 1848a–1849a, at 31–36. In doing so, EBASCO relied on Foster Wheeler's specialized expertise in designing such boilers. *See id.* at 1848a, at 32. In turn, EBASCO, as the overall designer of the plant, integrated the boiler into their plans. *See id.* at 1845a–1846a, at 20–21. During construction, Foster Wheeler provided an on-site erection consultant who interpreted the plans provided by Foster Wheeler and answered any questions that EBASCO had regarding the assembly of the boiler's components. *See id.* at 1862a–1863a, at 104–105.

6. We are not bound by decisions of the Commonwealth Court; however, such decisions provide persuasive authority. *See Citizens' Ambulance Service, Inc. v. Gateway Health Plan*, 806 A.2d 443, 446 n. 3 (Pa.Super.2002). Thus, we may turn to our colleagues on the Commonwealth Court for guidance when appropriate. *See id.*

7. There is conflicting testimony regarding the exact year the boiler was completed. For purposes of discussion, we adopt the latest year on record, 1955, as the completion date.

Furthermore, the boiler itself is clearly an improvement to real estate contemplated by the statute. Our Supreme Court has defined an improvement as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes...." *McCormick v. Columbus Conveyer Co.*, 522 Pa. 520, 564 A.2d 907, 909 (1989) (*citing* BLACK'S LAW DICTIONARY 682 (5th ed. 1979)). One of the most common improvements are fixtures involving chattel or personalty affixed to real property. *See Noll by Noll v. Harrisburg Area YMCA*, 537 Pa. 274, 643 A.2d 81, 87 (1994). Our courts developed a three-part test to determine whether personalty amounts to a fixture: "(1) the relative permanence of attachment to realty; (2) the extent to which the chattel is necessary or essential to the use of the realty; and (3) the intention of the parties to make a permanent addition to the realty." *Id.* (citations omitted).

The trial court concluded, albeit in a conclusory fashion, that the boiler constituted an improvement to real property. *See* Trial Court Opinion, 12/28/11, at 9. We see no reason to disagree with this conclusion. The boiler measured 134 feet tall and weighed "many, many tons." R.R. 1852a, at 45–46. It was permanently affixed to the plant via a reinforced concrete foundation. *See id.* at 46. The boiler burned coal, creating steam, which drove turbines for the production of electricity. *See id.* at 1852a, at 47. Thus, it provided the essential function of the plant. As a result, we conclude that the trial court did not err in finding that the boiler meets the requirements of an improvement to real property.

In their second argument, the Gravers claim there is no statutory right to repose in asbestos cases pursuant to *Abrams v. Pneumo Abex Corp.*, 602 Pa. 627, 981 A.2d 198 (2009). In *Abrams*, two plaintiffs, who developed lung cancer caused by asbestos exposure, filed suit against manufacturers of asbestos-containing products. Almost twenty years prior to this claim, the plaintiffs recovered from various defendants on a separate claim of increased risk and/or fear of cancer arising from nonmalignant asbestos-related diseases. One of the defendants in the later suit, Crane, was not named in the earlier suit. Crane sought dismissal from the later suit arguing the plaintiffs' claims against it were barred by the asbestos statute of limitations set forth in 42 PA. CONS.STAT.ANN. § 5524(8).

At the time of the earlier action, the "one disease rule" was in effect which required a plaintiff to bring all claims for existing nonmalignant and predictable malignant diseases, including cancer, within two years of the initial diagnosis of an asbestos-related disease. Crane argued that it should have been named in the earlier action pursuant to this rule, and that plaintiffs' failure to do so precluded their inclusion in the later suit.

The plaintiffs argued that the more recent "two disease" rule applied to their case. This rule provided for separate causes of action for malignant asbestos-related diseases and non-malignant asbestos related diseases. Thus, plaintiffs argued that their prior recovery for non-malignant asbestos-related disease did not trigger the statutory limitations period for a later claim of a malignant asbestos disease.

The Supreme Court agreed with plaintiffs. In doing so, the *Abrams* court observed, in *dicta*, that "no statutory right of repose exists with respect to asbestos cases. Indeed, had the legislature intend-

ed that asbestos exposure cases be subject to a statute of repose, it could have expressly indicated so in its enactment of 42 Pa.C.S.A. § 5524(8)." *Abrams,* 981 A.2d at 212. The Gravers rely on this statement to claim the statute of repose is inapplicable to their claim. While we respect the importance of precedent in shaping the jurisprudence of the Commonwealth, we find it difficult to conclude that such a generalized statement by the Supreme Court is binding on the issue before us today.

*Abrams* dealt solely with the interplay between the asbestos statute of limitations and the "one disease" and "two disease" rules. There was no discussion of the statute of repose for improvements to real estate. This omission is understandable considering the *Abrams* defendants were not involved in the design or construction of real property improvements, but instead they were *manufacturers* of asbestos products, and are thus subject to the asbestos statute of limitations. In this context, it gives us great pause to conclude that the Court's isolated statement was a blanket prohibition of statutes of repose in all asbestos cases. This is especially so when such declaration conflicts with a plain reading of the statute at issue. Therefore, we find the trial court erred by relying on *Abrams* for the proposition that there is no statute of repose in asbestos cases.

■ Lastly, the Gravers claim the statute of repose and asbestos statute of limitations are irreconcilable. If this is the case, the Statutory Construction Act mandates that "the statute latest in date of final enactment shall prevail." 1 Pa. Cons. Stat.Ann. § 1936. Therefore, the Gravers argue that the asbestos statute of limitations should apply since it was adopted more recently than the statute of repose. We disagree with this contention since both statutes can function without conflict.

The asbestos statute of limitations applies only to those cases arising from alleged exposure to asbestos. On the other hand, the relevant statute of repose has a greater reach and involves all claims against those persons involved in the design, planning, supervision, or construction of any improvement to real property. For the most part, the statutes will operate independently of one another. On occasion though, they will overlap in asbestos exposure claims caused by improvements to real property. However, this overlap will not prevent courts from giving effect to both statutes.

It is not our function as the judiciary to construct an asbestos-related exception to the statute of repose in construction cases. This role properly lies with the General Assembly, whose "chief function [is] to set public policy, and the court's role [is] to enforce that policy, subject to constitutional limitations." *Program Admin. Services, Inc. v. Dauphin County General Authority,* 593 Pa. 184, 928 A.2d 1013, 1017–1018 (2007) (citation omitted).

Indeed, other state legislatures have implemented various asbestos-related exceptions in their respective statutes of repose. Maryland's state legislature saw it fit to exempt personal injury and wrongful death actions caused by asbestos exposure. *See* Md.Code Ann., Cts. & Jud. Proc. § 5–108(d)(2)(ii)–(iii) (stating the statute does not apply against a manufacturer or supplier "for damages for personal injury or death caused by asbestos...."). New Jersey's state legislature did not construct a personal injury or wrongful death exception, but instead exempted actions by government units pursuant to "any contract for application, enclosure, removal or encapsulation of asbestos." N.J. Stat. Ann. § 2A:14–1.1(b)(4). Virginia has an excep-

tion similar to New Jersey, but applies it only to actions "brought by or on behalf of any agency of the Commonwealth incorporated for charitable or educational purposes; counties, cities or towns; or school boards . . . ." Va.Code Ann. § 8.01–250.1. If such an exception is eventually integrated into the Pennsylvania statute of repose, it should come from legislative action, and not an act of judicial fiat.

Since the statute of repose operates to bar the Gravers' claims, there is no need to address the parties' remaining arguments.

Judgment reversed. Jurisdiction relinquished.