2026 PA Super 97

| KYLE LANUNZIATA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PENNSYLVANIA NATIONAL MUTUAL | : | No. 898 MDA 2025 |
| CASUALTY INSURANCE COMPANY | : | |

Appeal from the Order Entered June 11, 2025
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
202310651

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

OPINION BY DUBOW, J.:                                    **FILED: MAY 13, 2026**

Appellant, Kyle Lanunziata, appeals from the June 11, 2025 order entered in the Luzerne County Court of Common Pleas granting the motion for summary judgment filed by Pennsylvania National Mutual Casualty Insurance Company ("Penn National").  The trial court dismissed Appellant's claims with prejudice in this declaratory judgment action in which Appellant claimed that he was entitled to underinsured motorist ("UIM") benefits under his parents' automobile policy.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On May 13, 2020, a third-party tortfeasor struck Appellant with his vehicle as Appellant was walking across an intersection in Kingston, Luzerne County.  Following the accident, Appellant submitted a UIM claim under an insurance policy (the

"Policy") that Penn National had issued to his parents. The Policy only listed Appellant's parents, and not the Appellant, as named insureds.

With respect to UIM benefits, the Policy defined an "insured" as the "[named insured] or any family member." Policy, 1/4/20, at UIM Coverage Insuring Agreement. The policy defines "family member" as "a person related to [the named insured] by blood, marriage[,] or adoption who is a **resident of your household**." Policy at Definitions (emphasis added).

On October 12, 2023, Appellant filed a complaint seeking a declaration that he was a "resident" of his parents' household and, thus, a covered insured under the Policy. On December 14, 2023, Penn National filed an answer to the complaint with new matter.

The parties conducted discovery, which established that Appellant moved out of his parents' home in 2017 or 2018 and rented an apartment in 2019. Discovery focused on Appellant's activities at his parents' house at the time of the accident in 2020.

Following the completion of discovery, the parties filed cross-motions for summary judgment, addressing whether Appellant was a "resident" of his parents' household. On June 11, 2025, the trial court entered summary judgment in favor of Penn National after finding that Appellant was not a "resident" of his parents' household at the time of the accident.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues for our review:

1. Whether [Appellant] is an insured entitled to [UIM] benefits under [the Policy] because he is a resident of his parents' household when the [Policy] is ambiguous, [Appellant] maintained contact with his parents' household, and [Appellant] maintained dual-residency?

2. In the alternative, should [Penn National's] summary judgment be denied because there is a genuine issue of material fact regarding the question of residency to be resolved by a factfinder?

Appellant's Br. at 4.

Appellant's issues challenge the trial court's entry of summary judgment in Penn National's favor. Accordingly, our standard of review is for an abuse of discretion or error of law, and our scope of review is plenary. ***Sokolsky v. Eidelman***, 93 A.3d 858, 861 (Pa. Super. 2014).

We also note that:

Generally, the proper construction of a policy of insurance is a matter of law which may properly be resolved by a court pursuant to a motion for summary judgment. ***Nationwide Mut. Ins. Co. v. Nixon***, [] 682 A.2d 1310, 1313 ([Pa. Super.] 1996). Thus, the issue of whether a claim is within a policy's coverage or barred by an exclusion is properly determined[,] provided that the policy's terms are clear and unambiguous so as to preclude any issue of material fact. ***See Butterfield v. Giuntoli***, [] 670 A.2d 646, 651 ([Pa. Super.] 1995).

As with all questions of law, our scope of review of a trial court's order granting summary judgment is plenary. Our standard of review is the same as that of the trial court; we must review the record in the light most favorable to the nonmoving party granting it the benefit of all reasonable inferences and resolving all doubts in its favor. We will reverse the court's order only where the appellant [] demonstrates that the court abused its discretion or committed legal error.

***Lewis v. Phila. Newspapers, Inc.***, 833 A.2d 185, 190 (Pa. Super. 2003) (internal citations omitted).

When interpreting a policy of insurance, we employ an analysis which, while derived from the law of contracts, recognizes that most insurance transactions are not freely bargained between equals but are largely adhesive in nature. *See Betz. v. Erie Ins. Exch.*, 957 A.2d 1244, 1252-53 (Pa. Super. 2008).

> Insurance policies, like all contracts, are enforceable in accordance with the language used[,] and the scope of their coverage may be determined by the court as a matter of law. *See Pappas v. UNUM Life Ins. Co. of Am.*, 856 A.2d 183, 187 (Pa. Super. 2004). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Charles D. Stein Revocable Tr. v. Gen. Felt Indus., Inc.*, 749 A.2d 978, 980 (Pa. Super. 2000). . . .

*Id.* at 1252-53.

*Safe Auto Ins. Co. v. Berlin*, 991 A.2d 327, 331 (Pa. Super. 2010) (quoting *Bishops, Inc. v. Penn Nat. Ins.*, 984 A.2d 982, 989-90 (Pa. Super. 2009) (footnotes omitted)). Moreover, "[w]hen construing a policy, words of common usage [] are to be construed in their natural, plain and ordinary sense [] and we may inform our understanding of these terms by considering their dictionary definitions." *Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1231 (Pa. Super. 2002) (citations and internal quotation marks omitted).

***

In Appellant's first issue, he claims that the trial court erred as a matter of law in concluding that he was not a "resident" of his parents' household. Appellant argues that he resided at his parents' home because he was physically present there for lunch every weekday and on most weekend days, had his mail delivered there and "sustained an ongoing, substantial

- 4 -

relationship with his parents' household . . . to classify him as a resident thereof." Appellant's Br. at 23-24.

The Courts of this Commonwealth have historically recognized a distinction between a person's domicile and his residence. *Krager v. Foremost Ins. Co.*, 450 A.2d 736, 737-38 (Pa. Super. 1982). A person's "domicile" is where he or she has a "true, fixed and permanent home and principal establishment," whereas a person's "residence" is his or her "factual place of abode," which requires only his or her physical presence. *Id.* at 738 (citation omitted).

"[T]he term 'resident' or 'residency' requires, at the minimum, some measure of permanency or habitual repetition." *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 965 (Pa. Super. 2007) (citation and quotation marks omitted); *see also Erie Ins. Exch. v. Weryha*, 931 A.2d 739, 744 (Pa. Super. 2007) (same).

The majority of insurance coverage cases interpreting the term "resident" analyze the issue with regard to the quantity of contacts an individual has with an insured's household. *Cf. Manross*, 939 A.2d at 968 (deposition testimony of family members and friends supported determination that grandson was not resident of insured's home, where he was a drifter whose visits did not occur with any regularity, but were random at best); *Krager*, 450 A.2d at 737-38 (where insured's son was living with his mother at the time of the accident, but had spent six months of each year living in his New York mobile home).

In this case, the trial court determined that Appellant was not a "resident" of his parents' household in 2020 because he had graduated from college in 2016 and leased an apartment in 2019 and had no intention of returning to live at his parents' home:

> This is not a college student living away temporarily but residing in their parents' home when not in school; nor is this a situation where the [p]laintiff may have multiple residences due to separated parents. [Appellant] graduated from college in 2016. He started his career and eventually moved into an apartment in 2019. The accident occurred after that point.
>
> ***
>
> In this case, [Appellant] moved into his childhood home and [then] into an apartment. From there, he did not have plans to return to his [parents' home]. Following the apartment, he moved on to purchase a home where he currently resides.

Trial Ct. Op., 11/1/25, at 6-7.

We agree. By the time of the accident in 2020, Appellant had been moved out of his parents' home for several years and was renting his own apartment. In other words, Appellant was an adult, living independently from his parents. Although Appellant ate lunch periodically and left some personal items at his parents' home and used his parents' address as his mailing address, these facts do not overcome the fact that he was leasing an apartment and spent the vast majority of his time sleeping, working, and living in his apartment. The quantity of contacts and time spent in his apartment greatly outweighed his contact with his parents' home. *Cf. Manross*, 939 A.2d at 968.

- 6 -

Our holding is consistent with this Court's holding in ***Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.***, 545 A.2d 343 (Pa. Super. 1988). In that case, Donegal denied coverage for the insured's daughter on the basis that she was not a resident of her father's household. ***Id.*** at 344. Her parents were divorced, and the daughter was living with her mother. ***Id.*** This Court found that although the daughter kept personal items at her father's house,[1] slept there periodically and received mail there, she was not a "resident" for purposes of the policy. ***Id.*** at 346.

The Court specifically rejected the fact that the daughter testified that she intended to live at her father's house. ***Id.*** at 348-49. The trial court reasoned that the relevant time-period to consider the daughter's status at her father's home was the time of the accident and found that, at that time, she did not regularly reside at her father's house. ***Id.*** at 349. Additionally, her intention to live there in the future was not the litmus test to determine residency status. ***Id.***

Our holding in ***Grix v. Progressive Casualty Ins. Co.***, 2020 WL 618557 (Pa. Super. 2020), is equally supportive of our holding. In ***Grix***, this Court affirmed the trial court's finding that Naomi Grix was not a "resident" of her parents' household when she had leased an apartment elsewhere and, therefore, her estate did not have a valid claim for stacked uninsured motorist

---

[1] In particular, the daughter left 40 pairs of shoes, books, cosmetics, stuffed animals, tennis equipment, and a pet rabbit at her father's home. ***Id.*** at 345.

benefits against her parents' insurer. *Id.* at *1. In particular, Ms. Grix was killed when she was a passenger in a vehicle that her parents owned and insured through Progressive. *Id.* Six weeks prior to the accident, Ms. Grix had signed a lease and moved into her own apartment. *Id.* We held that "although Naomi received mail at her parents' house, kept personal belongings there, and continued to use their address as her address of record, she could not be considered a 'resident' of the household because, among other things, she slept elsewhere every night." *Id.* at *5.

Appellant argues that the trial court erred in not placing sufficient weight on the fact that Appellant ate lunch regularly at his parents' home, had his mail delivered and left valuable personal items there, and had no plans not to return to live there. Appellant's Br. at 21-23. He further argues, in an attempt to distinguish the instant case from *Grix*, that the evidence showed that by his consistent, daily "physical presence" he "continued an ongoing relationship with [his] parents' household." *Id.* at 23-24.

First, we decline Appellant's invitation to reweigh the evidence in his favor. *See Executive Risk Indem., Inc. v. Cigna Corp.*, 74 A.3d 179, 182 (Pa. Super. 2013) ("[W]here credibility and the weight to be accorded the evidence are at issue, this Court will not substitute its judgment for that of the fact-finder."). Simply, the trial court was free to accord more weight to the evidence that Appellant was an adult who had moved out of his parents' home several years before the accident and, at the time of the accident, was leasing and living at his own apartment. The trial court was not required, as

Appellant suggests, to find dispositive of Appellant's residence that Appellant ate lunch at his parents' home most weekdays, visited there on the weekends, and left valuable personal items there. Moreover, Appellant's contention that he had no plan not to return to live at his parents' home is irrelevant and speculative and, thus, "not pertinent to the present issue." *See Amica*, 545 A.2d at 349 (explaining that evidence supporting the conclusion that the insured's daughter *had* lived in his home and *intended* to live there again was irrelevant to the location of her current residence "as a matter of physical fact") (emphasis in original).

We next reject Appellant's efforts to distinguish the facts of this case from those in *Grix*. Appellant claims that the *Grix* facts—cherrypicked by him—show that, unlike Appellant, Ms. Grix was committed to her new apartment because she, *inter alia*, shared utility bills with her roommates, moved her belongings out of her parents' home, and expressed no interest in moving back to her parents' home. Appellant's Br. at 23. Like Ms. Grix, however, Appellant was an independent adult who had physically moved out of his parents' house, leased an apartment elsewhere, and lived there. His contacts with his parents' home were merely incidental when compared to his contacts with his apartment.

Appellant, relying on *Amica*, *supra*, also claims that the evidence demonstrates that he was a dual resident of his parents' home and his apartment. *Id.* at 25-28. Appellant has not, however, cited to any controlling case law in support of the proposition that an independent adult, unlike a child,

can be a dual resident of his own apartment which he leased in his own name and of his parents' home. Rather, Appellant contends that because the **Amica** Court "specifically cautioned that an individual should not be automatically rendered a resident of separate households if, as a matter of physical fact, he lives at one and spends no significant time at the other[,]" we should consider the "inverse . . . open question, *i.e.*, whether an individual could be a resident of separate households if, as a matter of physical fact, he lives at one and spends significant time at the other[.]" **Id.** at 25 (citing **Amica**, 545 A.2d at 349). He urges this Court to find the significant time he spent at his parents' home for lunch as compelling evidence that he resided there. Appellant's Br. at 25.

Appellant's reliance on **Amica** to support his dual residency theory is misplaced as the **Amica** Court's discussion of dual residency was limited to contemplating the hypothetical dual residency of a **child** of separated or divorced parents where the "child divides his time between the two." **Amica**, 545 A.2d at 348. The instant matter is clearly distinguishable from **Amica** and the cases relied on by that Court for the simple reason that Appellant is not a minor child, let alone a child of divorced parents between whom he divides his time. He was, instead, a 26-year-old, gainfully-employed, college graduate, seeking independence from his parents "as much as [any] out of college guy." N.T. Lanunziata Dep., 12/1/22, at 37. Thus, for the foregoing reasons, Appellant's claim that he was a resident of his parents' home at the time of the accident fails.

In sum, the trial court properly concluded that Appellant was not a "resident" of his parents' home because at the time of the accident, he had already moved out of his parents' house for several years and had leased and spent the majority of his time in his own apartment. The trial court correctly rejected Appellant's contention that he was a "resident" of his parents' home because he ate lunch there, had his mail delivered there, and left a few personal items there.

\*\*\*

In his second issue, Appellant claims in the alternative that the trial court should have denied Penn National's motion for summary judgment because there exists a genuine issue of material fact as to Appellant's place of residency at the time of the accident. Appellant's Br. at 29-30. Our review of the record indicates, however, that Appellant did not raise this issue in opposition to Penn National's motion for summary judgment. By not raising this issue before the trial court, Appellant has waived it for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Even if not waived, we reject this argument. The record clearly shows that Appellant had moved out of his parents' home several years before the accident and at the time of the accident and was leasing an apartment where he was spending the vast majority of his time. Thus, the trial court properly found that the material facts were not in dispute and, as a matter of law, Appellant was not a "resident" of his parents' home.

- 11 -

***

In sum, we conclude that the evidence demonstrates that at the time of the accident, Appellant was not a resident of his parents' household. Accordingly, Appellant was not entitled to UIM coverage under the Policy and, therefore, the trial court properly entered summary judgment in Penn National's favor.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/13/2026